Bennett *vs.* Woolfolk, adm'r, &c.

No. 26.—John J. Bennett, plaintiff in error, *vs.* John W. Woolfolk, administrator, &c. and another, defendants: and John W. Woolfolk, administrator, &c. and D. & W. Gunn, plaintiffs in error, *vs.* John J. Bennett, defendant in error.

[1.] The bill, as amended, makes out a case of partnership, in which the members were Bennett on the one side, and D. & W. Gunn, on the other.

[2.] It seems that no adequate remedy exists at Law, for one · partner who seeks an account against his co-partners.

[3.] A prayer by one partner, that his co-partner may be compelled to pay over to him one-half of the nett profits of the partnership, includes within it, a prayer that an account of the partnership may be taken.

[4.] If, under an agreement, legal when entered into, but afterwards made illegal by Statute, acts are done, some during the time for which the agreement remained legal, some afterwards, the acts done during the time for which the agreement remained legal, are themselves legal.

[5.] If a matter, essential to the determination of the plaintiff's claims, is charged to rest in the knowledge of the defendant, or must, of necessity, be within his knowledge, and is, consequently, the subject of a part of the discovery sought by the bill, a precise allegation is not necessary.

[6.] On the death of a partner, the creditors of the partnership cannot sue the representatives of the deceased partner, but must sue the surviving partner, unless the partnership be insolvent.

[7.] Allegations which do not essentially vary the case made by a bill, may be inserted in that bill by amendment.

In Equity, in Bibb Superior Court. Decisions by Judge Powers, November Term, 1853.

The bill filed by John J. Bennett, in this case, alleged that in September, 1843, he entered into an agreement with D. & W. Gunn, to pursue the business of buying and selling negroes as partners, upon these terms:   D. & W. Gunn were to furnish all the funds, and Bennett to attend to the purchases and sales, and the nett profits were to be equally divided between the firm and Bennett; that he proceeded to Virginia, and elsewhere, and purchased a large number of negroes, from the date aforesaid until May, 1846, and sold them at good

Bennett *vs.* Woolfolk, adm'r, &c.

profits, taking the bills of sale to himself, and making them in the name of D. & W. Gunn, who received all the purchase money. The profits upon the sales, as appeared by a schedule attached to the bill, amounted to $15,940$\frac{50}{100}$. He farther alleged that he advanced, out of his own funds, towards the purchase of the negroes, the sum of $1,561 $\frac{00}{100}$ which the firm were bound to refund to him. David Gunn being dead, John W. Woolfolk, as his administrator, was made a party.— The prayer of the bill was for a decree for the one-half of the profits and the amount advanced.

To this bill an amendment was filed on the 6th August, 1853. Words—"Your orator further shows to your Honor, that he entered into said contract with said William Gunn, who represented himself as acting on behalf of himself and said Daniel Gunn; and the said William Gunn being then and there the active business partner of said firm of D. & W. Gunn, and managing and conducting its affairs, and he verily believed then, and so believes now, was authorized and empowered to enter into said partnership. But of this fact your orator is certain, and so charges the truth to be, that the said negroes were sold and bills of sale made and delivered to the purchasers thereof, respectively, in the partnership name of D. & W. Gunn, and the proceeds of sale were all received by said D. & W. Gunn, who have failed and refused to account to your orator for the same, or any part thereof".

To this bill, as amended, the defendants demurred.

1st. For want of Equity.

2d. Because the bill does not show any partnership.

3d. Because complainant has an adequate Common Law remedy.

4th. Because there is no prayer for an account.

5th. Because the contract sought to be enforced is illegal.

6th. Because the bill does not specify which or how many of the negroes were purchased, while the traffic was legal, under the laws of Georgia.

7th. Because the bill, as amended, is multifarious.

8th. Because the amendment introduces an entirely new cause of action.

9th. Because the amendment shows an adequate Common Law remedy.

10th. Because Woolfolk, as the administrator of D. Gunn, is improperly joined as a party.

The Court sustained the 7th, 8th and 9th grounds of demurrer, and ordered the amendment to be stricken out. The other grounds of demurrer were over-ruled. To the first decision, counsel for complainant excepted; to the latter, counsel for defendants excepted. Each have assigned error, and the causes were heard together.

STUBBS & HILL, for Bennett.

WHITTLE—HALL & MILLER, and HALL, for Woolfolk and others.

*By the Court.*—BENNING, J. delivering the opinion.

To the bill in this case, there was a demurrer on ten grounds.

On this demurrer, the judgment of the Court was this: that the demurrer be over-ruled, except the 7th, 8th and 9th grounds, which 7th, 8th and 9th grounds are allowed, and the amendment served, August 6th, 1853, is ordered stricken out, and the cause proceed as before said last amendment.

The seventh ground is as follows: "because said bill and amendment are multifarious in this, that they charge said D. & W. Gunn, in two and distinct capacities".

The eighth, "because said amendment seeks to, and does introduce, an entirely new case and cause of action, from that shown in the original bill".

The ninth, "because, taking the amendment to be true, complainant has a full and ample remedy at Law".

The Court also gave the following judgment: "after argument had on the amendment of 6th July, 1853, it is ordered that the same be over-ruled, and not allowed by Court".

To this judgment the complainant excepted, and he assigns the judgment for error in this Court.

Both parties assign errors.

The assignments of the defendants in error, will be first considered.

The decision of the Court, as far as it over-ruled any of the grounds of demurrer to the bill, is assigned for error by the defendants in the bill.

One of the over-ruled grounds of demurrer is, that the case made by the bill and amendment, shows no partnership between Bennett, the complainant, and D. & W. Gunn. Was this ground properly over-ruled ? Let us see.

As to a partnership between Bennett and D. & W. Gunn, what, then, is the case made by the bill and amendment? What say the bill and amendment? They may speak for themselves.

The bill, as un-amended, says: "that in the month of September, 1843, Daniel Gunn, of the county of Houston, in said State, and William Gunn of said county of Bibb, as partners and merchants, doing business in the City of Macon, under the firm name of D. & W. Gunn, entered into an agreement with" Bennett, "to enter into the purchase and sale of negroes, *as partners*, under and upon the following terms and stipulations, to-wit: that they, the said D. & W. Gunn, should furnish all of the funds, and that" Bennett " should attend to purchasing and selling the negroes that should be bought; and that the said D. & W. Gunn should have one-half of the *nett* profits arising from said business and" Bennett " the other half".

And the bill has in it this statement: " your orator showeth unto your Honor, that on the      day of      1843, he entered upon the duties assigned him under *said partnership agreement*".

The bill also says, that Bennett proceeded to Richmond, Virginia, and to other places, and purchased a large number of negroes; that he sold these negroes at a good profit; that in purchasing the negroes, he took the bills of sale *in his own name;* but in selling them, the bills of sale were made in the

name of D. & W. Gunn; that *D. & W. Gunn received the whole of the purchase-money for the negroes.*

The bill also states as follows: "your orator further. showeth unto your Honor, that the business continued to be actively and faithfully transacted by your orator, in connection with said D. & W. Gunn, from the said month of September, 1843, until the month of May, 1846, during which period of time there were bought and sold, for and on account of said *concern,* a large number of negroes, to-wit: one hundred and forty-one".

This is what the bill, in its unamended form, says with respect to a partnership between Bennett and D. & W. Gunn.

And that this is enough to show the existence of a partnership between Bennett and D. & W. Gunn, there can be no doubt. None was suggested by the counsel for the defendants, in the bill.

Does the amendment change this? What is the amendment?

Bennett says that he entered into said contract with Wm. Gunn, who represented himself as acting on behalf of himself and said Daniel Gunn; and that the said Wm. Gunn being the active business partner of the firm of D. & W. Gunn, and the manager and controller of its affairs, was, as he, Bennett, at the time of entering into the contract, verily believed, and as he, at the time of making the amendment, still believed, *authorized and empowered* to enter into said *partnership.* But of this fact, he said he was certain: that the negroes were sold, and bills of sale were made and delivered to the purchasers, *in the partnership name of D. & W. Gunn;* and the *proceeds of sale* were all *received by D. & W. Gunn.*

This is the amendment. It refers to the agreement set forth in the original bill, which was a *partnership* agreement between *Bennett,* on one side, and *D. & W. Gunn* on the other. It says, in making the contract, that is *this* partnership agreement, Wm. Gunn *represented* himself to be acting for himself and his partner, D. Gunn; that Wm. Gunn was the controll-

ing and managing member of the firm; that he, Bennett, *believed* him to be *authorized* to enter into said partnership.

This part of the amendment amounts to a statement that D. & W. Gunn, by their authorized agent, W. Gunn, in the belief of Bennett, entered into the partnership with him.

The remaining part of the amendment amounts to a positive allegation, that D. & W. Gunn, not W. Gunn, sold the negroes, made bills of sale of them, and received the money they sold for; that is to say, to an allegation that D. & W. Gunn, not W. Gunn, acted with him as his partners.

The case, then, in brief, made by the original bill and amendment, is this:

The original bill says, directly and positively, that Bennett, of the one part, and D. & W. Gunn, of the other, entered into the agreement, "*as partners*". It shows acts consistent with that relation.

The amendment says, that in *the belief* of Bennett, this same thing was done, but done on the part of D. & W. Gunn, by W. Gunn, as their authorized agent; and it states acts of D. & W. Gunn, consistent with the relation of partnership between D. & W. Gunn and Bennett.

The original bill says, D. & W. Gunn *were* partners; the amendment says, they were, as Bennett *believed*, partners.

The case made by the original bill, is a case of partnership in certainty; the case made by the amendment, is a case of partnership in belief. Is it possible that the case made by both put together, can be any thing other than one of partnership? The amendment makes no change of the case of partnership contained in the original bill.

[1.] The Court below was therefore right in over-ruling the ground, that the bill, as amended, shows no partnership between Bennett and D. & W. Gunn.

Another of the over-ruled grounds of demurrer is, that the complainant had, at Law, an adequate remedy.

In any suit at Law, except the old action of account, Bennett would have to be both plaintiff and defendant. The suit would have to be Bennett *vs.* Bennett and D. & W. Gunn; or,

since D. Gunn's death, Bennett *vs.* Bennett and W. Gunn, survivors. But in *Moffat and others vs. Van Millengen, note* (c,) to *Mainwaring vs. Newman,* BULLER, J. says: "the promise was made jointly with one of the plaintiffs. How can he sue himself, in a Court of Law? It is impossible to say that a man can sue himself". (2 *Bos. & Bul.* 125.) See *Bosanquet vs. Wray,* (6 *Taunt.* 497. *Story on Part.* §219.

And with respect to the old action of account, it may be remarked, that although it may still exist, yet, Courts of Equity have, for a very long time exercised, in cases of account, a concurrent jurisdiction with Courts of Law. (*Coll. on Part.* 165, *and cases cited in note b.*) And the ground upon which this jurisdiction of Courts of Equity has been made to rest, is the inadequacy of the remedy at Law. Lord *Eldon* says: "The principle upon which Courts of Equity originally entertained suits for an account, where the party had a legal title, is, that though he might support a suit at Law, a Court of Law either cannot give a remedy, or cannot give so complete a remedy as a Court of Equity; and by degrees, Courts of Equity assumed a concurrent jurisdiction in cases of account; for it cannot be maintained that this Court interferes only when no remedy can be had at Law. The contrary is notorious. The same species of relief is given at Law, in the action of account, as under a bill in this Court; but the great advantage of the latter, and the difficulty and delay when the account comes before auditors, has brought that action into disuse, as is observed by Lord *Hardwick,* in *ex parte Bax*". (2 *Ves.* 388.)

It is true that the bill in this case does not, in so many words, pray for an account to be taken, but it prays for that which cannot be done, except through the taking of an account. It prays that the defendants may be compelled to pay over to the complainant "one half of the nett profits realized by the said speculation in negroes; and also the said sum of money advanced" to the concern by the complainant. It is only by the taking of an account, that what one half of the "nett profits" amounts to, can be ascertained. The bill, in effect, therefore, prays that an account may be taken.

[2.] The result seems to be, that the Court was also right in this decision, viz: in deciding that the remedy at Law, was not adequate.

I must say for myself, however, that I have much doubt on this point. I doubt whether, by the action of account, the plaintiff could not, at Law, obtain all the relief which, by this bill, he can obtain in Equity.

The next over-ruled ground of demurrer is, that there is no prayer for an account.

[3.] But we have seen that in effect, there is a prayer for an account.

Besides, a defect of this sort, if it be a defect, is amendable.

The next over-ruled ground of demurrer is, that the contract sought to be enforced, is illegal.

The law, which this ground of demurrer assumed the contract to violate, is the Act of 22d December, 1843, which declares "That the Act entitled an Act to repeal all laws prohibiting the free introduction of slaves into this State, assented to December 27th, 1842, be, and the same is hereby repealed".

The contract was made in the month of September, 1843. The business was carried on under the contract, from September, 1843, to May, 1846. It appears from the bill of particulars, annexed to the bill of complaint, that a very large proportion of the negroes were bought in the year 1843; of this proportion a large part was, it is to be presumed, bought before the 27th of December, 1843, the date of the Statute which it is insisted, in the demurrer, the purchase violates.

Now, at the time when the contract was made, the contract was legal: It remained so until the 27th of December, 1843—several months. Whilst it continued to be legal, many of the negroes were purchased. As to these, Bennett was, and is most certainly entitled to his suit.

[4.] The demurrer, on this ground, if sustained, would have deprived him of his suit as to these. The Court, therefore, could not rightfully sustain it.

The next over-ruled ground of demurrer is, that the bill

does not specify which, or how many of the negroes were pur-
chased while the traffic was legal, under the laws of Georgia.

[5.] The rule on this subject is, that "if a matter, essential
to the determination of the plaintiff's claims, is charged to rest
in the knowledge of the defendant, or must, of necessity, be
within his knowledge, and is consequently the subject of a part
of the discovery sought by the bill, a precise allegation is not
required". (*Mit. Eq. Pl.* 42.)

Now, each partner is to be presumed to be acquainted with
all the acts of the partnership. The defendants in the bill, there-
fore, it is to be presumed, know "which and how many of the
negroes were purchased, while the traffic was legal"; and, in
being called upon to give an account, as in effect they are, they
are called upon themselves, to discover these very matters—a pre-
cise allegation with respect to such matter swas, ther efore, unne-
cessary.

At the worst, however, this, if a defect, was amendable.

Another of the grounds of demurrer over-ruled by the
Court is, that Woolfolk was improperly joined as a party.

[6.] We rather think the Court erred in this decision. We
think, that on the death of a partner, the creditors of the part-
nership cannot sue the representatives of the deceased partner,
but must sue the surviving partner, *unless the partnership be
insolvent.*

This seems to us to be the result of the authorities. We admit
that recently, another rule seems to be more in vogue in Eng-
land—a rule founded upon the assumption that, in partnership
contracts, the partners are *severally*, as well as jointly liable.
As yet, we are not prepared to yield to this assumption. The
authorities to which we refer in support of our opinion, are
*Lane vs. Williams,* (2 *Vern.* 292.) *Jacomb vs. Harwood,* (2
*Ves.* 265.) *Abbott vs. Smith,* (2 *W. Black,* 947.) *Gray
vs. Chiswell,* (9 *Ves.* 118.) *Ex parte Kendall,* (17 *Ves.*
519.) *Campbell vs. Mullett,* (2 *Swanst.* 576.) *Cowell vs.
Sykes,* (2 *Russ. R.* 191.) *Vulliamy vs. Noble,* (3 *Mer.* 593.)
*Baring's case,* (1 *Mer.* 611.)

On the other side may be mentioned, *Devaynes vs. Noble* (2

*Russ. & Mylne*, 495.)   *Wilkinson vs. Henderson*, (1 *Mylne & Keene*, 582.)   *Thorpe vs. Jackson*, (2 *Young & Collyer*, 1) *Story's Eq. sec.* 676.

We do not think, however, that a bill ought to be dismissed on demurrer, because it happens to have more parties in it than it should have.   Striking out the supernumeraries by amendment, is a more equitable way of remedying the defect: or in a case of this sort, the defect may be met by an allegation inserted in the bill, of the insolvency of the partnership, if the facts will warrant the making of such an allegation.   The complainant's counsel says to the Court, that the facts in this case do warrant the making of this allegation; and that they wish to be allowed to make it.

This being so, they will be allowed to amend the bill by making the allegation, if they can—if they cannot, Woolfolk, as administrator of D. Gunn, will be struck, as a party, from the bill.

Of the over-ruled grounds of demurrer, there remains for notice but one other, viz: that for a want of equity.   In disposing of the particular grounds, this, which includes them, and no more, as far as we can see, has been also disposed of.

Let us pass, then, to the case of the complainant in the bill. He complains of but a single decision of the Court below, namely: the decision disallowing the amendment.

The amendment, we have already considered.   It merely puts in issue a few additional facts, which though material, do not essentially vary the case made by the original bill.   It is material to the plaintiff's case, that W. Gunn was authorized by D. & W. Gunn, to form, on behalf of D. & W. Gunn, a partnership with him, the plaintiff.   The allegation of this is about all that is new in the amendment.

[7.] Obviously, such matter is proper for amending with.— And such matter, it is equally obvious, would not, if inserted in the original bill, make that bill multifarious, or introduce into it a new cause of action, or so change the case made by the bill, as to render it a case for which a Common Law remedy would be adequate.   The Court below, it seems, thought the

introduction of such matter into the bill, would have these effects. In this, we consider the Court to have been mistaken.