## UNITED STATES v. DIETRICH.

### (Circuit Court, D. Nebraska. January 8, 1904.)

1. CONTRACTS—DISCHARGE—EVENTS RENDERING CONTRACT ILLEGAL.

    A contract, lawful in its inception, but which becomes unlawful by reason of some subsequent event, is thereby dissolved and terminated in so far as it remains executory.

2. UNITED STATES—ILLEGALITY OF CONTRACT WITH MEMBER OF CONGRESS—CONSTRUCTION OF STATUTE.

    Rev. St. § 3739 [U. S. Comp. St. 1901, p. 2508], which provides that "no member of or delegate to Congress shall directly or indirectly, himself, or by any other person in trust for him, or for his use or benefit, or on his account, undertake, execute, hold, or enjoy, in whole or in part, any contract or agreement made or entered into in behalf of the United States," and which makes its violation a misdemeanor, and declares that all contracts made in violation thereof shall be void, applies to a contract made between the United States and one who was not at the time a member of, or delegate to, Congress, but who became such while the contract was still executory in whole or in part. In such case, on his becoming a member the contract was at once dissolved, and his obligation to further perform it and his right to hold and enjoy further benefit from it were terminated by operation of law.

Indictment under section 3739 of the Revised Statutes [U. S. Comp. St. 1901, p. 2508] charging that the defendant, while a senator in Congress from the state of Nebraska, did "hold and enjoy" a contract theretofore entered into between himself and the United States

¶ 2. Validity of contracts with public officers as affected by legality of object or consideration, see note to Washington Irr. Co. v. Krutz, 56 C. C. A. 10.

for the use and occupation, for purposes of a United States post office at Hastings, Neb., of a lot and building owned by the defendant. The time when the offense was committed is stated to have been December 20, 1901, but the time when the contract was entered into is not given. In support of a demurrer to the indictment, the defendant contended (1) that, in the absence of anything to the contrary, it should be assumed that the contract was entered into prior to his becoming a senator—at a time when it could have been entered into lawfully—and (2) that his subsequently becoming a senator did not affect his obligation to perform the contract or his right to hold and enjoy it.

W. S. Summers, U. S. Atty., and S. R. Rush, Asst. U. S. Atty.

John C. Cowin and R. A. Batty, for defendant.

Before VAN DEVANTER, Circuit Judge, and MUNGER, District Judge.

VAN DEVANTER, Circuit Judge (after stating the facts as above). The argument of counsel for the government, as well as for the accused, having proceeded as if this indictment directly presented the question whether one who lawfully enters into a contract with the United States, and subsequently, and during the life of the contract, becomes a senator in Congress, may continue to hold and enjoy that contract, we will, for the purposes of this decision, treat the indictment as if it specifically charged facts from which this question would necessarily arise. The pertinent statutory provisions are [U. S. Comp. St. 1901, pp. 2508, 2509]:

"Sec. 3739. No member of or delegate to Congress shall directly or indirectly, himself, or by any other person in trust for him, or for his use or benefit, or on his account, undertake, execute, hold, or enjoy, in whole or in part, any contract or agreement made or entered into in behalf of the United States, by any officer or person authorized to make contracts on behalf of the United States. Every person who violates this section shall be deemed guilty of a misdemeanor, and shall be fined three thousand dollars. All contracts or agreements made in violation of this section shall be void; and whenever any sum of money is advanced on the part of the United States, in consideration of any such contract or agreement, it shall be forthwith repaid; and in case of refusal or delay to repay the same, when demanded, by the proper officer of the department under whose authority such contract or agreement shall have been made or entered into, every person so refusing or delaying, together with his surety or sureties, shall be forthwith prosecuted at law for the recovery of any such sum of money so advanced.

"Sec. 3740. Nothing contained in the preceding section shall extend, or be construed to extend, to any contract or agreement, made or entered into, or accepted, by any incorporated company, where such contract or agreement is made for the general benefit of such incorporation or company; nor to the purchase or sale of bills of exchange or other property by any member of or delegate to Congress, where the same are ready for delivery, and payment therefor is made, at the time of making or entering into the contract or agreement.

"Sec. 3741. In every such contract or agreement to be made or entered into, or accepted by or on behalf of the United States, there shall be inserted an express condition that no member of or delegate to Congress shall be admitted to any share or part of such contract or agreement, or to any benefit to arise therefrom."

We think it is entirely clear that the purpose and effect of this legislation is to absolutely inhibit all contractual relations with the United States upon the part of any member of or delegate to Congress through "any contract or agreement made or entered into in behalf of the United States, by any officer or person authorized to make contracts on behalf of the United States," save in the instances specifically excepted by section 3740. The comprehensive character of the inhibition is more apparent when it is considered that it is not confined to contracts or agreements obtained or held through the exercise of the influence incident to membership of or delegateship to Congress, or to those which are not fair to the United States, or to those which give an undue advantage to a member of or delegate to Congress. It plainly includes "any contract or agreement," no matter how fairly obtained or held, how reasonable in its terms, or how advantageous to the United States. The inhibition is not alone against undertaking or executing—that is, making or entering into—such a contract or agreement, but also against holding or enjoying one—that is, having or retaining the title thereto or receiving the benefits thereof. Moreover, the language used shows great care in bringing equally within the condemnation and penalty of the statute any indirection employed for substantially accomplishing what is within the principal inhibition. A sufficient reason for such legislation is that it tends to preserve the independence of the legislative and executive branches of the Government, and to free each from that influence which might come to be exerted over it by the other if the officers of the executive branch, acting on behalf of the government, could freely contract with members of and delegates to Congress. The purpose of the statute is to effectually close the door to the temptation which is incident to contractual relations between the government and members of Congress. The government's interest in the construction or renting of buildings, or in the purchase of supplies, is not made secure merely by making a contract therefor. An important step in that direction is taken when a contract is made with a competent and reliable contractor upon suitable terms, but this must be followed by performance according to the terms and spirit of the contract. The duty of insisting upon and securing proper performance is not less important than that of making the contract in the first instance, and the personal interest, adverse to the government, of a member of or delegate to Congress, in this matter of performance, would be calculated to have the same effect upon the character of the accepted performance that the like relation would have upon the character of a contract entered into while it existed. For a member of or delegate to Congress to hold or enjoy such a contract or agreement with the United States seems to us to be equally within the letter and purpose of the inhibition, irrespective of when or how he comes to be a party to it. But it is urged on behalf of the defendant that the inhibition against holding and enjoying relates to contracts or agreements originally made with a member of or delegate to Congress in violation of the statute, and to contracts or agreements originally made with another person and afterwards assigned or transferred to such member or delegate, and that it is without application to a contract or agree-

126 F.—43

ment which comes to be held by a member of or delegate to Congress, not through any unlawful act in its original making or in its subsequent assignment or transfer, but through the lawful and subsequent election as such member or delegate of the person with whom it was originally and lawfully made. This contention is based upon the provision: "All contracts or agreements made in violation of this section shall be void;" and it is said this indicates a purpose to avoid or nullify only such contracts as are unlawful at their making, and to leave unaffected and in full operation all those which are lawfully made. We think the statute does not make any such distinction. The word "void," while readily susceptible of different meanings, is here obviously used in the sense of null or of no effect from the beginning, and not admitting of ratification. It was not intended to say that contracts or agreements made in violation of the statute should be only voidable, or that they should be merely capable of being avoided at the election of some officer of the Government. There are excellent reasons why this declaration, expressly rendering null and of no effect from their inception contracts or agreements made in violation of the statute, should not have been made applicable to contracts or agreements valid at the time of their making. Where a contract or agreement with the United States, valid when made, is subsequently attempted to be assigned or transferred to a member of or delegate to Congress, it is not necessary, even if permissible, to invalidate it from the very beginning. The purpose of the statute is accomplished by invalidating only the assignment or transfer, and by leaving the individual with whom the contract or agreement was originally made charged with the full performance of his obligations thereunder. Nor is it necessary, in order to accomplish the purpose of the statute, to invalidate from the very beginning a contract or agreement lawfully entered into, where, during its life, the individual with whom it was made becomes a member of or delegate to Congress. The purpose of the statute is then accomplished by terminating the contract or agreement in so far as it remains executory, but without extinguishing or avoiding, even if that were permissible, the rights of either party acquired by its lawful performance, or by its breach, up to that time. It is well established by the English courts and by the courts of this country, federal and state, that where performance of a contract or agreement, lawful in its inception, becomes unlawful by reason of any subsequent event, the contract or agreement is thereby dissolved or terminated, in so far as it remains executory, and both parties are excused from its further performance. Sheppard's Touchstone, 373; 1 Chitty on Contracts (11th Ed.) 1076; 2 Parsons' Contracts, 674; Clark on Contracts, 507; Bishop on Contracts, § 594; Abbott's Merchant Shipping (13th Ed.) 754; Melville v. De Wolf, 4 El. & Bl. 844, 850; Reid v. Hoskins, Id. 979, 984; Newby v. Sharpe, 8th Ch. Div. 39; Anglesea v. Rugeley, 6 Q. B. 107, 114; Bailey v. De Crespigny, Law Rep. 4 Q. B. 180; Brick Presbyterian Church v. New York, 5 Cow. 538; Mississippi, etc., Co. v. Green, 9 Heisk. 588, 592; Knoxville v. Bird, 12 Lea, 121, 49 Am. Rep. 326; Cordes v. Miller, 39 Mich. 581, 33 Am. Rep. 430; Brown v. Dillahunty, 4 Smedes & M. 713, 723, 43 Am. Dec. 499; Bradford v. Jen-

kins, 41 Miss. 328, 335; Irion v. Hume, 50 Miss. 419, 427; Macon, etc., Co. v. Gibson, 85 Ga. 1, 17, 11 S. E. 442, 21 Am. St. Rep. 135; Odlin v. Ins. Co., 18 Fed. Cas. p. 583 (No. 10,433); Tait v. Ins. Co., 23 Fed. Cas. p. 620 (No. 13,726); Hangner v. Abbott, 6 Wall. 532, 535, 18 L. Ed. 939; New York Life Ins. Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789; Ins. Co. v. Davis, 95 U. S. 425, 24 L. Ed. 453; Jones v. Judd, 4 N. Y. 411; Heine v. Meyer, 61 N. Y. 171, 176; Bennett v. Woolfolk, 15 Ga. 213.

When this contract between the United States and the defendant was entered into, the statute to which we have referred was then in existence, and became an essential part of the contract, as much so as if it had been copied therein at length. As was said by Mr. Justice Swayne in Walker v. Whitehead, 16 Wall. 314, 317, 21 L. Ed. 357:

"The laws which exist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it. This embraces alike those which affect its validity, construction, discharge, and enforcement."

In legal contemplation the contract declared in unmistakable terms (1) that if the individual with whom it was made was then a member of or delegate to Congress it should never be of any legal effect; (2) that it should never be held or enjoyed by any member of or delegate to Congress; and (3) that no such member or delegate should ever be admitted to any share or part thereof or to any benefit to arise therefrom. In other words, the statute and the contract declared an utter incompatibility between being a member of or delegate to Congress, and being at the same time charged with a duty to perform the contract and clothed with a right to receive any benefit therefrom. The moment, therefore, that the defendant became a member of the Senate, this contract was dissolved—his obligation to further perform it and his right to further hold and enjoy it were terminated—by operation of law. He then assumed an official relation to the government which rendered it unlawful, and therefore incompatible, for him to longer have or sustain contractual relations of this character. The rule governing such a case is much the same as that applicable to the holding of two incompatible public offices, which is that where a person holding one office accepts and enters upon the discharge of the duties of another and incompatible office he thereby vacates the first. We are entirely convinced that the statute covers the case assumed by counsel to be stated in this indictment. This view gives reasonable effect to every portion of the statute, and permits it to have operation upon every case equally within the mischief intended to be guarded against or suppressed. To the suggestion that in practical operation this view will result in loss or injury to persons who become members of or delegates to Congress while holding and enjoying contracts or agreements with the United States, we answer that such cases are not of frequent occurrence, and that the acceptance of a seat in Congress is entirely voluntary. In any event, the statute, being plain and unambiguous in terms, and being within the authority of Congress, must be administered by the courts as it is written. Counsel for defendant have referred us to an opinion given to the Secretary of the Navy by Mr. Attorney General Rodney August

9, 1809, 5 Op. A. G. 697 (see, also, 2 Id. 38; 15 Id. 280; 18 Id. 286), · in which that officer arrives at a conclusion contrary to that here expressed. The construction of a doubtful or ambiguous statute by the Attorney General in the discharge of his duty to render opinions upon questions of law arising in the administration of any of the executive departments is always entitled to respectful consideration, and where that construction is acted·upon for a long time by those charged with the duty of executing the statute it ought not to be overruled without cogent reasons. United States v. Moore, 95 U. S. 760, 763, 24 L. Ed. 588; Hahn v. United States, 107 U. S. 402, 406, 2 Sup. Ct. 494, 27 L. Ed. 527. But this rule is not applicable to statutes which are plain and unambiguous. Swift v. United States, 105 U. S. 691, 695, 26 L. Ed. 1108; United States v. Graham, 110 U. S. 219, 221, 3 Sup. Ct. 582, 28 L. Ed. 126. We cannot follow or approve the opinion cited. It does not refer to the terms of the statute; the reasons assigned for the conclusion stated are brief and unsatisfactory; it is not shown that this opinion has been followed in any of the executive departments for any length of time, or at all; and we think the statute is, as above stated, plain and unambiguous.

The demurrer is overruled.