CENTRAL NEW ENGLAND RAILWAY COMPANY
*v.* BOSTON & ALBANY RAILROAD COMPANY,
ASSIGNOR.

No. 532. Argued April 19, 1929.—Decided May 13, 1929.

*Mr. John L. Hall,* with whom *Mr. Marcien Jenckes* was on the brief, for petitioner.

*Messrs. Lowell A. Mayberry* and *George H. Fernald, Jr.,* were on the brief for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

Petitioner is an interstate rail carrier having a branch line, a portion of which formerly extended a distance of 1.87 miles from Feeding Hills to Agawam Junction, Massachusetts, where it connected with the line of respondent. In order to secure an entrance to Springfield, Massachusetts, petitioner, on October 25, 1899, entered into a contract which provided that until August 30, 1940, it should have the right to operate a limited number of trains per day over the line of respondent from Agawam Junction to Springfield, for which it agreed to pay the sum of

$15,000 annually. In 1921, purporting to act under a certificate of public necessity. issued by the Interstate Commerce Commission, petitioner abandoned this section of its branch line, notified respondent that it would no longer meet its obligations under the contract and proceeded to sever the connection between their lines.

This suit was brought by the New York Central Railroad, lessee of the present respondent, in the Superior Court for Suffolk County, Massachusetts, to recover from petitioner the annual payments due under the contract; and a verdict was returned in favor of the plaintiff. Exceptions to rulings on the trial in the superior court were overruled by the Supreme Judicial Court of Massachusetts on condition that the present respondent be substituted as plaintiff. The superior court entered judgment for respondent in accordance with the rescript of the higher court. The judgment of the superior court was thus, under local practice, a final decision of the highest court of the state in which the decision could be had and the writ of certiorari, 278 U. S. 596, was properly directed to that court. See *Davis y. Cohen Co.*, 268 U. S. 638, 639; *Myers* v. *International Trust Co.*, 273 U. S. 380, 381.

Petitioner offered several defenses to the suit in the state court, only two of which involve federal questions, and which alone may be considered here.

1. In June, 1921, petitioner made application to the Interstate Commerce Commission, as required by § 1, paragraph 18, of the Interstate Commerce Act, as amended by the Transportation Act of 1920, 41 Stat. 456, 474, " for a certificate of public convenience and necessity . . . permitting the abandonment of operation of its line between Feeding Hills . . . and Agawam Junction . . ." on the grounds that it could not be operated except at a large annual loss and other available transportation facilities had rendered its continuance unnecessary. The Commis-

sion issued its certificate accordingly, authorizing petitioner to abandon the designated section of its branch line.

It is contended by petitioner that the effect of the order was to relieve it from making any further annual payments under its contract. It is said that the provisions of the Transportation Act conferring broad powers on the Interstate Commerce Commission, and designed to secure to interstate carriers an adequate return and the segregation from surplus earnings of a revolving fund for their benefit, see *Dayton-Goose Creek Ry. Co.* v. *United States,* 263 U. S. 456, 478, taken in conjunction with its authority to permit the abandonment by a carrier of a part of its line, evidence a purpose to grant to the Commission power to relieve the carrier from the further performance of obligations already incurred which are incidental to the operation of the abandoned section. From this it is concluded that, as the abandonment of the branch line by which alone petitioner could reach the tracks of respondent, made it impossible for petitioner to exercise its trackage rights over the lines of respondent, the order permitting the abandonment must be taken to have relieved petitioner from its obligation to make further payments which served but to reduce its revenues and so to burden its other commerce.

Respondent argues, with persuasive force, that the purpose of § 1, paragraphs 18, 19, 20 of the Transportation Act, was merely to protect the public from ill advised or improper abandonment of its line by an interstate carrier, *Colorado* v. *United States,* 271 U. S. 153, and that it conferred no authority upon the Commission to relieve a carrier of its contractual obligations either past or prospective, with respect to an abandoned line. But we need not pass on this contention. It suffices, for present purposes, that the certificate and the accompanying report of the Commission did not purport to exercise such a power.

The former certified only that the present and future public convenience and necessity permitted the abandonment of the designated section of petitioner's branch line and that petitioner was authorized to abandon it. No reference was made in it to the present or any other contractual obligation of petitioner, and respondent, whose rights were vitally affected by the order, if petitioner's contention is to be supported, was not notified of the proceeding before the Commission nor a party to it.

The report mentioned the fact that petitioner's trains entered Springfield over the tracks of the Boston & Albany, for which privilege it paid $15,000 annually, and included a finding that the operating loss for the abandoned section for the year 1920 was $38,832.58. But even though it be possible to spell out of this finding as to revenue the conclusion that the net loss included the annual rental of $15,000, the findings did not so state, nor was the trackage agreement otherwise mentioned. The omission from the certificate of any reference to the contract thus brought to the attention of the Commission, plainly evidences an absence of intention to deal with it. Even if the broad purposes ascribed to the Act be assumed, it is not to be supposed that the Commission intended to do more than was stated in its order or to deprive respondent of income to which it was entitled under its contract for the purpose of lightening the financial burden of petitioner, both of whom were interstate carriers, without giving respondent an opportunity to be heard and without dealing with the question specifically.

To the suggestion of petitioner that, by force of the statute, the permission to abandon its line necessarily operated to cancel its obligation, regardless of the intention of the Commission, we need only say that the statute contains no such provision nor any language suggesting it. We need not decide whether such may be the effect of a proper order of the Commission on contracts previously

entered into by the carrier and not expressly mentioned in the order, where the contract and the order necessarily conflict. See *Colorado* v. *United States,* 271 U. S. 153, 165; *New York* v. *United States,* 257 U. S. 591, 601; cf. *New England Divisions Case,* 261 U. S. 184. But without such a conflict, there could be no justification for holding that the order would also operate *sub silentio* to release a carrier from a contract merely because it has ceased to be of value through compliance with the order. This is especially the case where the other party to the contract is another common carrier with whose financial condition the Commission is equally concerned.

2. Petitioner also challenged the jurisdiction of the state court. As the suit is upon contract and does not assail the order of the Commission, it is not one to " enjoin, set aside, annul or suspend " an order of the Commission of which the federal district courts are given exclusive jurisdiction under § 208 of the Judicial Code. Hence the state court retained its jurisdiction to give " remedies now existing at common law," preserved by § 22 of the Interstate Commerce Act, *Pennsylvania R. R.* v. *Puritan Coal Co.,* 237 U. S. 121; *Pennsylvania R. R.* v. *Sonman Coal Co.,* 242 U. S. 120, and subject to the power of revision by this Court, it could construe the order of the Commission. *Great Northern Ry. Co.* v. *Merchants Elevator Co.,* 259 U. S. 285.

In *Lambert Co.* v. *Baltimore & Ohio R. R. Co.,* 258 U. S. 377; *Venner* v. *Michigan Central R. R. Co.,* 271 U. S. 127; *North Dakota* v. *Chicago & Northwestern Ry. Co.,* 257 U. S. 485; *Illinois Central R. R. Co.* v. *Public Util. Comm.,* 245 U. S. 493, relied upon by petitioner, affirmative relief was prayed directing either that the order be set aside, or that the carrier do or refrain from doing acts in a manner inconsistent with the order of the Commission directing or permitting certain administrative acts to be per-

formed, relief which, it was held, would operate practically to set aside the order of the Commission. Here respondent does not ask that the order be set aside or that it be regarded as illegal and void; it insists only that the order did not purport to deal with the contract between the carriers, and so cannot have the effect, attributed to it by petitioner, of annulling the contract. The question is merely one of the legal effect of the order. Neither party contests its validity or asks that the carrier be compelled to do anything inconsistent with its terms.

*Affirmed.*