## WESTERN PAC. R. CO. v. NEVADA–CALIFORNIA–OREGON RY.

### No. 17623.

District Court, N. D. California, S. D.

April 7, 1930.

A. S. Hutchinson and L. N. Bradshaw, both of San Francisco, Cal., for plaintiff.

Sanborn & Roehl, De Lancey C. Smith, and Douglas Brookman, all of San Francisco, Cal., for defendant.

NORCROSS, District Judge.

Plaintiff's demurrer to the answer and motion to strike therefrom certain alleged defenses present the question whether a certain certificate issued by the Interstate Commerce Commission, in pursuance of a hearing participated in by plaintiff, permitting the abandonment by defendant of a portion of its line of railroad connecting with that of plaintiff, and certain orders made by the Commission relative to division of joint rates and fares, are or may be a defense to an action for damages for alleged breach of a contract for the exchange of freight and passenger traffic.

Plaintiff in its complaint alleges the execution of a certain contract on or about March 24, 1917, by the provisions of which the two companies agreed to "continue in force and effect the existing joint rates and through routes for the transportation of freight and passengers between points on or reached by way of their respective lines of railroad * * * and will from time to time join with each other in establishing just and reasonable joint rates and through routes for the transportation of freight and passengers between points on or reached by way of their respective lines of railroad as the same may now or shall hereafter exist and will in every way facilitate the interchange of freight and passenger traffic between their respective lines of railway as the same may now or shall hereafter exist * * * and will in such respects conform to the established practices between railways whose interests are closely allied." Subject to certain provisions or exceptions not here important, the defendant company further agreed that it would deliver to the plaintiff company "for transportation all unrouted traffic originating at points on its line of railway; * * * and that it will to the fullest extent possible influence, through solicitation and otherwise, the routing by the lines of the Pacific (plaintiff) Company of all traffic originating at points on or reached by way of the lines of the Pacific Company; and that it will likewise cause to be delivered to the Pacific Company for transportation all unrouted freight traffic solicited by it and its agents at points off its line of railway and destined to points thereon; * * * and that as to all points

on its line of railway it will in all respects regard and treat the Pacific Company as its preferential connection. * * * " The term of the contract was "for a period of fifteen (15) years * * * and thereafter until either party shall give to the other six (6) months written notice of its desire to terminate the same."

The complaint alleges that "ever since the 30th day of October, 1922, defendant has entirely repudiated said contract * * * and * * * has failed and refused to interchange any freight or passenger or any traffic with plaintiff as provided in said contract or at all." For the alleged breach, damages are prayed for in the sum of $500,000.·

From the answer it appears that defendant at the time of the execution of the contract was the owner of a narrow-gauge railroad extending from a point or station called Hackstaff, on the main line of the Western Pacific Railroad, in Lassen county, Cal., northerly to Lakeview, in the state of Oregon, a distance of 171 miles. At a point or station called Wendel, sixteen miles north of Hackstaff, the defendant's railroad intersected a branch line of the Southern Pacific Company. At a station called Flanigan, about 15 miles easterly from Hackstaff, plaintiff's railroad intersects the said branch line of the Southern Pacific Company.

In addition to general denials, the answer alleges that, because for a period of years defendant's operating expenses had exceeded its operating revenues, its directors, on November 11, 1921, authorized application to be made to the Interstate Commerce Commission "for authority to abandon, entirely, the operation of defendant's line of railroad," and thereafter such application was made on November 21, 1921; that hearings were held thereon, participated in by plaintiff and other interested parties, and the matter decided by the Commission on August 18, 1922, citing 72 I. C. C. page 433. It is further alleged that during the pendency of said application, on March 3, 1922, the Interstate Commerce Commission "on its own motion * * * instituted a formal investigation into the matter of the division of the joint rates, fares and charges on traffic interchanged between the railroad of the defendant herein" and the connecting lines of the plaintiff and of the Southern Pacific Company. A copy of the order instituting such investigation is set out as an exhibit, from which it appears that the plaintiff, the defendant, and the Southern Pacific Company were each "made respondents to this proceeding." Attached to defendant's answer, as an exhibit, is an alleged copy of the certificate of the Interstate Commerce Commission, of date August 18, 1922 (Finance Docket No. 1796), authorizing the abandonment of a portion of defendant's line of railroad, which, omitting formal portions, reads: "It is hereby certified, That the present and future public convenience and necessity permit the abandonment by the Nevada-California-Oregon Railway of the southerly 16 miles of its line of railroad between Wendel and Hackstaff, Cal."

From the "Report of the Commission," also forming a part of the exhibit, appears the following statement: "The record shows, however, that the public may be adequately served by the interchange facilities at Wendel, and that there is no public need for the continued operation of that portion of the line which lies between Wendel and Hackstaff. It is not needed in order to supply a connection with the Western Pacific at Hackstaff, since through traffic routed via that line can be handled via the connections at Wendel and Flanigan. It serves no substantial need, and the exigencies of the situation seem to require that no unnecessary or unproductive facilities be continued in service."

From the report of the division of the Commission conducting the hearings, made in pursuance of the direction of the Commission, of date March 3, 1922, for an "investigation into the matter of the joint rates, fares and charges," which was specifically "referred to and made a part" of the order of the Commission, of date August 9, 1922, appears the following, among other expressions:

"The record shows that the Nevada-California Oregon Railway is a transportation facility which, in the public interest, must be retained in operation. * * *

"What we have said above does not apply to the line between Hackstaff and Wendel, which we believe should be abandoned. The exigencies of the situation demand that no unnecessary or unproductive transportation facilities be continued in service, depending upon support from the rate-paying public. * * * Our report and order dealing with the matter of abandonment will be issued in Finance Docket No. 1796. * *, * The prospective discontinuance of the interchange at Hackstaff renders it unnecessary to consider an adjustment of the Western Pacific divisions at this time."

█ The law is well settled that under the Interstate Commerce Act, as amended or sup-

plemented by the Transportation Act of 1920 (49 USCA § 1 et seq.), the Interstate Commerce Commission has power to authorize or require the abandonment of all or a portion of a line of railroad theretofore used in interstate commerce. Central N. E. Ry. Co. v. B. & A. R. Co., 279 U. S. 415, 49 S. Ct. 358, 359, 73 L. Ed. 770; Colorado v. United States, 271 U. S. 153, 46 S. Ct. 452, 454, 70 L. Ed. 878; Dayton-Goose Creek Ry. Co. v. U. S., 263 U. S. 456, 44 S. Ct. 169, 171, 68 L. Ed. 388, 33 A. L. R. 472; Texas v. Eastern Texas R. R. Co., 258 U. S. 204, 42 S. Ct. 281, 66 L. Ed. 566.

As stated by the late Chief Justice Taft, speaking for the court in the Dayton-Goose Creek Ry. Co. Case, the Transportation Act "in the public interest * * * aims to give the owners of the railways an opportunity to earn enough to maintain their properties and equipment in such a state of efficiency that they can carry well this burden." To the same effect is the opinion of the court by Justice Brandeis, in the Colorado Case, wherein it is said: "The certificate issues not primarily to protect the railroad, but to protect interstate commerce from undue burdens or discrimination. The Commission by its order removes an obstruction which would otherwise prevent the railroad from performing its federal duty."

The contract sued upon must be deemed to have been made subject to the provisions of existing law and the power of Congress over matters pertaining to interstate commerce. Highland v. Russell Car Co., 279 U. S. 253, 261, 49 S. Ct. 314, 73 L. Ed. 688; Walker v. Whitehead, 16 Wall. (83 U. S.) 314, 21 L. Ed. 357; United States v. Dietrich (C. C.) 126 F. 671. "Even explicit charter provisions must yield to the paramount power of Congress to regulate interstate commerce." Colorado v. United States, supra.

It might be, and in some cases doubtless would be, of no advantage to the public if the Interstate Commerce Commission could relieve a carrier from the burden of maintaining a useless line of railroad and then the carrier be liable in damages to some other connecting carrier because the relief so granted had affected the carrier's ability to comply with the terms of an existing contract. Contracts between carriers may be of such a character as not to be affected by the action of the Commission in permitting the abandonment of a portion of a railroad connecting the lines of the contracting parties. Cen-

tral N. E. Ry. Co. v. B. & A. R. Co., supra. In referring to the certificate of abandonment considered in the case last cited, the court, however, said: "No reference was made in it to the present or any other contractual obligation of petitioner, and respondent, whose rights were vitally affected by the order, if petitioner's contention is to be supported, was not notified of the proceeding before the Commission nor a party to it."

In the case at bar it appears, from the copies of the proceedings and orders of the Commission set up in the answer, that the plaintiff was represented at the hearing upon the subject-matter of the application for abandonment and was by order of the Commission made a party to the ancillary proceeding concerning the question of the division of joint rates, fares, and charges on interchanged traffic—the very subject-matter of the contract. The answer further specifically alleges that the plaintiff "appeared in each of said two proceedings by counsel, submitted testimony and exhibits, and participated in the hearings and arguments therein; that said contract of March 24, 1917, was introduced as an exhibit in each of said two proceedings, and that the plaintiff herein urged * * * by formal petition for rehearing and otherwise, that the Commission * * * had attempted to authorize a breach by defendant herein of said contract." It is also alleged that petition for a rehearing was subsequently denied and a copy of the order of denial is attached to the answer as an exhibit.

It appears from the alleged action of the Commission set out in the answer that the question of the adjustment of division of freights and fares as between plaintiff and defendant was to be left for future consideration following the actual "discontinuance of the interchange at Hackstaff." Plaintiff had a right at some appropriate time to have that matter adjusted. Whatever obligation was owing to plaintiff by defendant under the contract for the time subsequent to abandonment would be limited to a compliance with the orders of the Commission made subsequent to August 18, 1922.

Other questions of minor importance have been raised, particularly in reference to defendant's "second defense," which are deemed unnecessary to consider at length.

The demurrer should be overruled, and the motion to strike denied. It is so ordered.