**W. H. B. SIMPSON et al., Appellants,**

v.

**SOUTH WESTERN RAILROAD COMPANY and Central of Georgia Railway Company, Appellees.**

**No. 15765.**

United States Court of Appeals
Fifth Circuit.

March 20, 1956.

Charles J. Bloch, Bloch, Hall, Groover & Hawkins, Macon, Ga., for appellants.

John B. Miller, Gen. Counsel, Savannah, Ga., H. D. Russell, Walter A. Harris, Macon, Ga., Harris, Russell, Weaver & Watkins, Macon, Ga., Miller & Beckmann, Savannah, Ga., of counsel, for appellees.

Before BORAH, TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from an order of the District Court denying a motion to remand to the state court and an order dismissing the complaint originally filed by appellants, as minority stockholders of the South Western Railroad Company[1] against their own corporation, its directors and officers and the Central of Georgia Railway Company, alleging that under the provisions of a Georgia statute they were proceeding to prevent an ultra vires act in the nature of an agreement between South Western and Central whereby Central was to take possession of and operate all the railroad facilities of South Western.

The principal question decided by the trial court and the principal question presented on appeal is whether an action ostensibly posited on a state statute authorizing a minority stockholder suit against their own corporation, and an allegedly .oppressive majority, acting for their own and not the corporation's

---

1. Plaintiffs owned 664 out of 51,911 shares, approximately 1¼% of the capital stock.

interests is nevertheless a "civil action of which the district courts have original jurisdiction founded on a claim or right arising under the constitution, treaties or laws of the United States"[2] and is thus removable to the Federal Court if it seeks, in fact, to have the state court enjoin or suspend or set aside a course of action which the Interstate Commerce Commission has specifically authorized by appropriate order. The relevant sections from the statute which appellees point to as the laws of the United States on which appellant's right is founded are reproduced in the margin.[3]

Litigation between these parties or others asserting substantially the same conflict of interests has been long and arduous. It has been before this court previously in other aspects in Benton v. Callaway, 5 Cir., 165 F.2d 877, affirmed sub nom. Callaway v. Benton, 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553. It has been before a three judge district court in Benton v. United States, 114 F.Supp. 37, and before the Supreme Court of Georgia in South Western R. Co. v. Benton, 206 Ga. 770, 58 S.E.2d 905, certiorari denied 340 U.S. 815, 71 S.Ct. 44, 95 L.Ed. 599. The fact that there has already been a long story of litigation involving the effort of this small minority of the stockholders to achieve an opportunity to challenge what has seemed best for the corporation to the overwhelming majority, does not prevent our treating this chapter of the story with all the consideration which litigants have the right to command, when, as here, they appear to be standing on what they urge as rights accorded them under state laws. The failure of this court to repeat in wealth of detail all of the allegations of the complaint does not justify the conclusion that we have not carefully reviewed them in testing the analysis made of them by the trial court. Such omission from this opinion is made possible by the very excellent statement of the case by the able trial judge in his opinion which is reported at 128 F.Supp. 532.

In essence the appellants charge that the Central of Georgia Railway Company had acquired some 98% of the stock in South Western; that the interests of the majority were thus to favor Central; that Central selected the directors, eliminating any who were not Central employees; that there existed a dispute between South Western and Central as to the state of accounts between them resulting from operations subsequent to 1948; that Central's representatives on South Western's board were not interested or alert in asserting the point of view of South Western; that the new board, with majority stockholder's approval, had negotiated an

2. 28 U.S.C.A. § 1441(a) and (b).

3. 28 U.S.C.A. § 1336:
"Except as otherwise provided by Act of Congress, the district court shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in part, any order of the Interstate Commerce Commission. June 25, 1948, c. 646, 62 Stat. 931."
28 U.S.C.A. § 1337:
"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies. June 25, 1948, c. 646, 62 Stat. 931."
28 U.S.C.A. § 2321:
"The procedure in the district courts in actions to enforce, suspend, enjoin, annul or set aside in whole or in part any order of the Interstate Commerce Commission, other than for the payment of money or the collection of fines, penalties and forfeitures, shall be as provided in this chapter. [No. 157]."
28 U.S.C.A. § 2322:
"All actions specified in Section 2321 of this title shall be brought by or against the United States."
28 U.S.C.A. § 2325:
"An interlocutory or permanent injunction restraining the enforcement, operation or execution, in whole or in part, of any order of the Interstate Commerce Commission shall not be granted unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

agreement with Central to operate the railroad properties of South Western on terms unfair to South Western stockholders other than Central, such operating agreement being subject to the approval of the Interstate Commerce Commission; that such agreement amounted to a lease of the South Western road and transfer of its franchise, which was ultra vires and void under the Georgia laws; that South Western had some $1,200,000 worth of bonds and other liquid assets which had been turned over to the new officers upon their taking control.

Having thus charged, appellants prayed the court to decree the operating agreement to be "ultra vires, null and void"; that it would cause serious injury to South Western and it was oppressive; that it be cancelled and operations under it be restrained and enjoined; that an accounting be rendered by defendants as to the disposition of the securities with a return of any of them that might have been transferred to Central in satisfaction of any alleged indebtedness or for any other purpose, pending a final determination of "all differences between South Western and Central."

■ Several basic facts emerge from even this short recitation of allegations and prayer for relief. The first is that the complaint definitely asked the Superior Court of Bibb County, Georgia to enjoin the operation of an agreement which had been authorized by the Interstate Commerce Commission. The court may take judicial notice of such order. The second is the fact that the complaint did not purport on its face

to touch on any order of the Commission, although one had in fact been entered prior to the filing of the suit. The third is that no cause of action is asserted in the complaint other than that attacking the validity of the operating agreement and the right of the plaintiffs to bring the action under the Georgia statute, there being no separate cause of action for an accounting between the two corporations or an action for damages for improper management for prior years or a showing of irreparable injury or insolvency of defendants to support an action to enjoin the transfer of securities alone.

Thus, there is here nothing more or less than a state court suit seeking to prevent the defendants from carrying out an operating agreement between two railroad companies, both admittedly subject to all proper action of the Interstate Commerce Commission, which at the time of the filing of the suit had entered an order specifically authorizing it.[4]

It seems to us that the appellants are here forced into the narrow position of arguing that this suit is not a suit to "suspend, enjoin, annul or set aside" an *order* of the Interstate Commerce Commission because all it seeks is to suspend, enjoin, annul and set aside a *course of action* that the Commission order has approved and authorized. Further, it appears that this position is supportable, if at all, on two grounds: first, that the complaint must be looked at without reference to any outside pleadings or documents to determine whether it is a suit which "arises under the Constitution, laws or treaties of the

4. The order of the Commission follows:
    "Investigation of the matters and things involved in this proceeding having been made, and said division having, on the date hereof, made and filed a report containing its findings of fact and conclusions thereon, which report is hereby referred to and made a part hereof:
    "It is ordered, That, subject to the conditions for the protection of railroad employees referred to in said report, the operation, under contract by the Central

of Georgia Railway Company of all of the properties of the South Western Railroad Company, as described in the report aforesaid, upon the terms and conditions in said report found just and reasonable, be, and it is hereby, approved and authorized."
    See Finance Docket No. 18465, South Western Railroad Company Operation, Decided May 14, 1954, not printed in full in I.C.C. Reports but referred to in 290 I.C.C. 812.

United States"; second, that if the order of the ICC is to be considered, it is only permissive, and a suit to enjoin action *authorized* by the Commission is not a suit to enjoin an order of the Commission.

We find that both of these propositions have been decided against the contention of the appellants by the Supreme Court, the first in Lambert Run Coal Co. v. Baltimore & Ohio R. R. Co.[5] and the second in Venner v. Michigan Central R. R. Company.[6]

■ Under our constitutional system Congress, of course, has plenary power to regulate commerce among the states. It had full power, therefore, to create the Interstate Commerce Commission and to prescribe its duties, giving to it such powers as necessary to accomplish its purpose, even though they might override powers otherwise belonging to the states. It also, of course, has full power to prescribe limitations on reviews and appeals from the actions of the Commission. This it has done in providing: that "the district court shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in part, any order of the Interstate Commerce Commission"[7]; that "the procedure in the district courts in actions to enforce, suspend, enjoin, annul or set aside in whole or in part any order of the Interstate Commerce Commission * * * shall be as provided in this chapter"[8]; that "all actions specified in section 2321 of this title shall be brought by or against the United States"[9]; and that "an interlocutory or permanent injunction restraining the enforcement, operation or execution, in whole or in part, of any order of the Interstate Commerce Commission shall not be granted unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."[10]

In the Lambert Run Coal Company case, supra, the plaintiff brought an action in the state court to enjoin the defendant railroad from following rules for the distribution of cars which had been prescribed by the Interstate Commerce Commission. The suit made no mention of this latter fact. The suit was remanded, and the district court, sitting without invoking a three judge court, granted an injunction. The Supreme Court, on appeal, affirmed the action of the Court of Appeals for the Fourth Circuit, 276 F. 776, in reversing the judgment of the district court, but further held that the Court of Appeals should have ordered a dismissal of the case. The Supreme Court said [258 U.S. 377, 42 S.Ct. 351]:

"* * * The fact that this was a suit to set aside an order of the Commission did not appear on the face of the bill; but it became apparent as soon as the motion to dismiss was filed. Jurisdiction cannot be effectively acquired by concealing for a time the facts which conclusively establish that it does not exist. As the state court was without jurisdiction over either the subject-matter or the United States, the District Court could not acquire jurisdiction over them by the removal. The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction. Courtney v. Pradt, 196 U.S. 89, 92, 25 S.Ct. 208, 49 L.Ed. 398; American Well Works Co. v. Layne [& Bowler Co.], 241 U.S. 257, 258, 36 S.Ct. 585, 60 L.Ed. 987."

Appellee seeks to distinguish this case from Lambert by pointing to the

---

5.  258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671.

6.  271 U.S. 127, 46 S.Ct. 444, 70 L.Ed. 868.

7.  28 U.S.C.A. § 1336.

8.  28 U.S.C.A. § 2321.

9.  28 U.S.C.A. § 2322.

10.  28 U.S.C.A. § 2325.

fact that the question of removal was not present in Lambert. However, there is in that case reasoning which when applied here makes it authority for the action of the trial court in denying the remand. The Supreme Court said:

> "But there are in addition two fundamental objections to the jurisdiction: First, the United States, an indispensable party to suits to restrain or set aside orders of the Commission, was not joined, and could not be, for it has not consented to be sued in state courts. Secondly, such suits are required to be brought in a federal District Court. Judicial Code, §§ 208, 211 * * *; Act of October 22, 1913, c. 32, 38 Stat. 208, 219 * * *. Illinois Central R. R. Co. v. [State] Public Utilities Commission, 245 U.S. 493, 504, 38 S.Ct. 170, 62 L.Ed. 425; State [of North Dakota] ex rel. Lemke v. Chicago & Northwestern Ry. Co., 257 U.S. 485, 42 S.Ct. 170, 66 L.Ed. 329; State of Texas v. Interstate Commerce Commission, 258 U.S. 158, 42 S.Ct. 261, 66 L.Ed. 531. * * *"

■■ If, as said by the Court there, such suits as this "are required to be brought in a Federal District Court" can there be any doubt but that this is a civil action of which the District Court has original jurisdiction "founded on a claim or right arising under the Constitution, treaties or laws of the United States"? We think not. The United States is a necessary party defendant to an action to enjoin, annul or set aside an order of the Commission.[11] It cannot be sued in the state court. Any suit, therefore, to enjoin, annul or set aside such an order may be brought only by virtue of the Federal statute giving that right. "A suit arises under the law that creates the cause of action."[12]

The law that creates the cause of action here is the law that says such a suit must be against the United States and that it must be in the federal district court.

There is nothing to the contrary to what we have drawn from the Lambert case in Gully v. First National Bank.[13] The court there pointed out the course to be followed in ascertaining just where to draw the line:

> "This Court has had occasion to point out how futile is the attempt to define a 'cause of action' without reference to the context. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 67, 68, 53 S.Ct. 278, 280, 77 L.Ed. 619. To define broadly and in the abstract 'a case arising under the Constitution or laws of the United States' has hazards of a kindred order. What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation. One could carry the search for causes backward, almost without end. Bird v. St. Paul F. & M. Insurance Co., 224 N.Y. 47, 51, 120 N.E. 86, 13 A.L.R. 875; Leyland Shipping Co. v. Norwich Fire Insurance Society, (1918) A.C. 350, 369; Aetna Insurance Co. v. Boon, 95 U.S. 117, 130, 24 L.Ed. 395; Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U.S. 469, 474, 24 L.Ed. 256. Instead, there has been a selective process which picks the substantial causes out of the web and lays the other ones aside. As in problems of causation, so here in the search for the underlying law. If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal

---

11. See f.n. 3, supra, and the Lambert opinion, supra.

12. American Well Works Co. v. Layne &

Bowler Co., 241 U.S. 257, 36 S.Ct. 585, 586, 60 L.Ed. 987.

13. 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70.

statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by." Gully v. First Nat. Bank, 299 U.S. 109, 117, 118, 57 S.Ct. 100.

It is too clear for argument that the dispute here is basically and substantially one that arises under the laws of the United States, because it is one that may be pursued here only by leave of the federal statute and must be brought against the United States itself only in the forum which it prescribes. We, therefore, hold that an action to enjoin conduct directed by an order of the Interstate Commerce Commission is removable as one "arising under the Constitution, treaties or laws of the United States," whether or not the complaint is, in form, a suit to enjoin, annul or suspend such order.

But, appellant here says this order of the Commission is permissive only, and is not mandatory; so, it is said, an action to prevent these defendants from doing acts which are merely "approved and authorized" by the Commission is not an action to enjoin, suspend or annul such order itself. This argument is, we believe, answered by the Supreme Court in the second of the two cases cited above. Venner v. Michigan Central R. R. Co., supra. In that case the argument was made that, since, in a removed state court suit to enjoin what the Commission had approved and authorized, the order of the Commission was only permissive, such suit was not prohibited as one to enjoin, annul or set aside the Commission's order. The Court said:

"We agree with the court below that the suit is essentially one to annul or set aside the order of the Commission. While the amended bill does not expressly pray that the order be annulled or set aside, it does assail the validity of the order and pray that the defendant company be enjoined from doing what the order specifically authorizes, which is equivalent to asking that the order be adjudged invalid and set aside. Lambert Run Coal Co. v. Baltimore & Ohio R. R. Co., 258 U.S. 377, 380, 382, 42 S.Ct. 349, 66 L.Ed. 671. Such a suit must be brought against the United States as the representative of the public and may be brought only in a federal district court. Judicial Code, §§ 208, 211 * * * ; Act Oct. 22, 1913, c. 32, 38 Stat. 219 * * * ; Illinois Central R. R. Co. v. State Public Utilities Commission, 245 U.S. 493, 504–505, 38 S.Ct. 170, 62 L.Ed. 425; State of North Dakota v. Chicago & Northwestern Ry. Co., 257 U.S. 485, 487, 42 S.Ct. 170, 66 L.Ed. 329; Texas v. Interstate Commerce Commission, 258 U.S. 158, 164, 42 S.Ct. 261, 66 L.Ed. 531; Lambert Run Coal Co. v. Baltimore & Ohio R. R. Co., supra. That the order is not mandatory, but permissive, makes no difference in this regard. Chicago Junction Case, 264 U.S. 258, 263, 44 S.Ct. 317, 68 L.Ed. 667. And, as the state court was without jurisdiction, the federal court acquired none by the removal. Lambert Run Coal Co. v. Baltimore & Ohio R. R. Co., supra."
Venner v. Mich. Cent. R. R. Co., 271 U.S. 127, 130, 46 S.Ct. 444, 445, 70 L.Ed. 868.

Appellants seek to find support for their position here in our recent case of Gulf Mobile & Ohio R. R. Co. v. Illinois Central Railroad Co.[14] No similarity exists between the two cases on the point at issue here. In that case the Commission's order had expressly declined to pass upon the legal question that was subsequently presented to the

14. 5 Cir., 225 F.2d 816.

district court. Thus, there was not even a permissive order of the commission touching the point there at issue. The same is true as to the case of Central New England R. R. Co. v. Boston & Albany R. R. Co.,[15] where it was held that a state court had jurisdiction to determine, in a suit between two carriers, the status of a contract which was not dealt with by the order of the Commission there relied on by the defendant.

■ We next come to the question as to whether the trial court properly dismissed the suit after denying the motion for remand. Under the authority of the cases just cited, the court undoubtedly had this duty unless there was a separate cause of action pleaded on which relief could be granted. We think there was none. In fact, little attention is paid to this phase of the case by appellants themselves. They say in their brief:

"Even if one branch of our suit as brought in the state court should perchance 'founder on the rock' of the Interstate Commerce Commission's order, the other branch would remain—the other branch or phase of the suit having nothing whatso-ever to do with any possible effect of the Interstate Commerce Commission's order."

This assertion could only apply to the matters contended for in those prayers of the complaint which, in effect, assert that the plaintiffs are entitled to have an accounting by the officers of their company as to the status of certain negotiable securities and to have such securities maintained in status quo pending a final determination of all differences between the plaintiffs and the defendants, and between the two railroad defendants.[16]

It will be noted that no affirmative relief in the nature of an accounting between plaintiffs and defendants or between the two railroad defendants is sought. No debt is alleged for which a recovery is prayed. It is clear that the relief prayed in these three paragraphs is purely ancillary to the main object of the suit. As we have said above, the state court had no jurisdiction over such an action and we agree with the trial court that the complaint was subject to dismissal for want of jurisdiction.

The judgment appealed from is

Affirmed.

15. 279 U.S. 415, 49 S.Ct. 358, 73 L.Ed. 770.

16. These prayers are as follows:
"(g) That until such judicial determination, Central of Georgia Railway Company, its officers, agents and employees, and South Western Railroad Company, its officers, agents and employees be restrained and enjoined from disposing of or changing the status of any assets of South Western Railroad Company;
"(h) That South Western Railroad Company, its officers, agents and employees render an accounting as to whether or not any of the securities described in the complaint or the cash mentioned therein have been expended, and if so for what purpose;
"(i) That if any portion thereof has been delivered to Central of Georgia Railway Company in satisfaction of any alleged indebtedness alleged to be due it by South Western, or otherwise, that Central of Georgia Railway Company be required to restore such to South Western Railroad Company pending a final determination of all differences between South Western and Central of Georgia Railway Company;"