**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,**

v.

**ARKANSAS PUBLIC SERVICE COMMISSION; Robert E. Johnston, Commissioner; Patricia S. Qualls, Commissioner; and James W. Daniel, Commissioner, Appellees.**

No. 84–1488.

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1984.

Decided June 7, 1984.

Rehearing En Banc Denied July 3, 1984.

W.W. Elrod, II, Arkansas Public Service Com'n, Robert L. Waldrum, Arkansas Public Service Commission, Little Rock, Ark., for Arkansas Public Service Com'n.

Edgar Mayfield, William C. Sullivan, St. Louis, Mo., D.D. Dupre, Gary T. Hartman, Prince & Ivester by Hermann Ivester, Little Rock, Ark., for Southwestern Bell Telephone Co.

Before HEANEY, BRIGHT and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The Arkansas Public Service Commission denied a rate application filed by Southwestern Bell Telephone Company and, in doing so, refused to follow an order of the Federal Communications Commission mandating specific accelerated depreciation methods for intrastate ratemaking. Southwestern Bell then sought to enjoin the Arkansas Commission's disobedience of the FCC order under 47 U.S.C. § 401(b) (1976). The district court denied Southwestern Bell's petition on the grounds that the order was ultra vires because the FCC lacked authority to prescribe depreciation methods for the intrastate portion of property used in providing telephone service. On appeal, Southwestern Bell argues that the district court was without jurisdiction to determine the validity of the FCC order and that it erred in denying injunctive relief. We reverse and remand with directions that the district court enjoin the Arkansas Commission from continued disobedience of the FCC order.

A 1980 order of the FCC established certain depreciation rates and methods for the interstate operations of telephone companies. *Report and Order,* 83 F.C.C.2d 267 (1980), *reconsidered,* 87 F.C.C.2d 916 (1981). The FCC subsequently clarified its order by announcing that state regulatory commissions were not preempted from adopting inconsistent depreciation methods for purposes of intrastate ratemaking. *Memorandum Opinion and Order,* 89

F.C.C.2d 1094 (1982). Within nine months, however, the FCC reversed its position and announced that state commissions were preempted from utilizing depreciation methods different from those mandated by the FCC. *Memorandum Opinion and Order*, 92 F.C.C.2d 864 (1983) (Preemption Order). In reversing its position, the FCC concluded that the language and legislative history of 47 U.S.C. § 220(b) (1976),[1] along with its authority to preempt state actions that interfere with federal policies and objectives,[2] empowered it to "preempt inconsistent state depreciation policies and rates." *Preemption Order* at 880. A later FCC order prescribed Equal Life Group and Remaining Life depreciation methods, and attached a schedule based on these methods to be used by Southwestern Bell in Arkansas. *Order*, No. 83–587 (Dec. 20, 1983).

The Arkansas Commission was one of several interested parties which filed comments that were considered by the FCC before it issued the Preemption Order. The validity of the Preemption Order is on appeal to the United States Court of Appeals for the Fourth Circuit. *Virginia Corp. Comm. v. FCC*, No. 83–1136 (4th Cir. filed Feb. 18, 1983).[3] The parties have stipulated that the Arkansas Commission is a party to the Fourth Circuit appeal and has taken no steps to stay the Preemption Order while the appeal is pending.[4]

On March 23, 1983, Southwestern Bell filed with the Arkansas Commission an application for a rate increase for its intrastate services. Part of its request was based on the increased depreciation expenses resulting from the FCC's Preemption Order. The Arkansas Commission rejected Bell's application, stating that

> [u]ntil such time as this matter is finally resolved in the Federal Courts or by the United States Congress we stand firm in our conviction and belief that the FCC does not have the lawful right to exercise preemption over intrastate depreciation rates.
>
> . . . .
>
> We believe that we have not lawfully been preempted by the FCC, therefore, we are not bound to adopt the depreciation methods prescribed by the FCC, but rather are free to adopt whatever depreciation methods we feel reasonable and justified.

*In Re Application of Southwestern Bell Telephone Co.*, No. 83–045–U at 15–16, 18 (Jan. 23, 1984).

On March 9, 1984, Southwestern Bell filed a complaint in district court. It sought a declaratory judgment that the Arkansas Commission's refusal to abide by the Preemption Order was unlawful and to enjoin it from using any depreciation methods other than those prescribed by the

---

**1.** 47 U.S.C. § 220(b) provides as follows:

(b) The Commission shall, as soon as practicable, prescribe for such carriers the classes of property for which depreciation charges may be properly included under operating expenses, and the percentages of depreciation which shall be charged with respect to each of such classes of property, classifying the carriers as it may deem proper for this purpose. The Commission may, when it deems necessary, modify the classes and percentages so prescribed. Such carriers shall not, after the Commission has prescribed the clasess [sic] of property for which depreciation charges may be included, charge to operating expenses any depreciation charges on classes of property other than those prescribed by the Commission, or after the Commission has prescribed percentages of depreciation, charge with respect to any class of property a percentage of depreciation other than that prescribed therefor by the Commission. No such carrier shall in any case include in any form under its operating or other expenses any depreciation or·other charge or expenditure included elsewhere as a depreciation charge or otherwise under its operating or other expenses.

**2.** 47 U.S.C. § 151 (1976) provides in part that the FCC was created to "make available, so far as possible, to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, . . . ."

**3.** Oral argument was heard on October 7, 1983.

**4.** The reviewing court has authority to stay an FCC order pending judicial review. 28 U.S.C. § 2349(b) (1982).

FCC.[5] The district court denied the relief sought by Southwestern Bell. It held that the Preemption Order was ultra vires because the FCC lacked jurisdiction to preempt inconsistent depreciation rates for intrastate ratemaking. It denied injunctive relief under 47 U.S.C. § 401(b)[6] on the grounds that an ultra vires order cannot be "regularly made" within the meaning of that statute. The district court also examined Southwestern Bell's request for injunctive relief under the traditional equitable analysis. *See Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir.1981). It held that Bell failed this standard for two reasons: (1) it had no probability of success on the merits because the FCC order was ultra vires and (2) the public interest factor weighed heavily on the side of the Arkansas Commission. This appeal followed. We set an expedited briefing schedule and heard oral argument on May 17, 1984.

I.

Under 28 U.S.C. § 2342(1) (1982), the courts of appeals are given exclusive jurisdiction to "enjoin, set aside, suspend ..., or to determine the validity of all final orders of the Federal Communications Commission...." *City of Peoria v. General Elec. Cablevision Corp.*, 690 F.2d 116, 119 (7th Cir.1982); *City of Rochester v. Bond*, 603

F.2d 927, 934–35 (D.C.Cir.1979). The Supreme Court recently confirmed the primacy of appellate court jurisdiction under section 2342(1). *FCC v. ITT World Communications, Inc.*, —— U.S. ——, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984). This decision makes clear that litigants may not evade the requirements of section 2342(1) and 47 U.S.C. § 402(a) (1976)[7] by requesting the district court "to enjoin action that is the outcome of the agency's order." *ITT World Communications*, at ——, 104 S.Ct. at 1939.

While *ITT World Communications, supra*, was decided after the district court decision, the Arkansas Commission nevertheless argues that the district court had jurisdiction to declare the Preemption Order ultra vires.[8] It contends that section 2342 and *ITT World Communications* are inapplicable because the present case does not involve an action to enjoin or set aside an agency action. The Arkansas Commission points out that in *ITT World Communications*, the action was not brought under statutes specifically granting the district court subject matter jurisdiction. This case, however, was brought under section 401(b) which specifically grants the district court jurisdiction to enforce FCC orders. The Arkansas Commission further argues that the specific grant of jurisdiction provided under section 401(b)[9] permits the dis-

---

**5.** Southwestern Bell's complaint also contained a second count seeking the same relief from the Arkansas Commission's transfer of certain revenue requirements to interstate jurisdiction. This issue is not before us on this appeal.

**6.** 47 U.S.C. § 401(b) provides as follows:

(b) If any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, the Commission or any party injured thereby, or the United States, by its Attorney General, may apply to the appropriate district court of the United States for the enforcement of such order. If, after hearing, that court determines that the order was regularly made and duly served, and that the person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such person or the officers, agents or representatives of such per-

son, from further disobedience of such order, or to enjoin upon it or them obedience to the same.

**7.** 47 U.S.C. § 402(a) provides as follows: "Any proceeding to enjoin, set aside, annul, or suspend any order of the [FCC] ... shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28."

**8.** The district court acknowledged section 2342 in its order, but held it inapposite since the proceeding was not one to enjoin, set aside, annul, or suspend an order of the FCC.

**9.** In addition to section 401(b), Southwestern Bell brought its action under 28 U.S.C. §§ 1331, 1337, 2201 and 2202 (1983). The Arkansas Commission asserts that the district court possessed ancillary jurisdiction incident to each of these statutes. Our disposition of its argument under section 401(b) applies with equal force to each of the remaining statutes.

trict court to consider the validity of the Preemption Order under the doctrine of ancillary jurisdiction.[10]

We reject the argument that the district court possessed ancillary jurisdiction incident to section 401(b). It is well established that where a statute specifically provides for exclusive jurisdiction in one court, as 28 U.S.C. § 2342 does, the specific grant of jurisdiction takes precedence over a general grant of jurisdiction. *See, e.g., Assure Comp. Transp., Inc. v. United States,* 629 F.2d 467, 471 (7th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981); *City of Rochester v. Bond,* 603 F.2d at 935; *Inv. Co. Inst. v. Fed. Reserve Sys.,* 551 F.2d 1270, 1279 (D.C.Cir.1977); *United States v. Southern Ry. Co.,* 364 F.2d 86, 91–92 (5th Cir.1966), *cert. denied,* 386 U.S. 1031, 87 S.Ct. 1479, 18 L.Ed.2d 592 (1967). The specific grant of exclusive jurisdiction in the courts of appeals for review of FCC orders precludes the district court from exercising ancillary jurisdiction to determine the validity of the Preemption Order.

The argument that section 2342 and *ITT World Communications* are inapplicable to the present case is also without merit. Although Southwestern Bell did not bring this action as one to enjoin or set aside an agency order, the Arkansas Commission's defense was the invalidity of the Preemption Order. Where the practical effect of a successful attack on the enforcement of an order involves a determination

of its validity, the statutory procedure for review provided by Congress remains applicable.[11] *Cf. B.F. Goodrich Co. v. Northwest Industries, Inc.,* 424 F.2d 1349, 1353–54 (3d Cir.1970), *cert. denied,* 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970) (statutory procedure for review of ICC orders is applicable so long as the practical effect of a successful suit "would contradict or countermand a Commission order."); *Simpson v. Southwestern R.R. Co.,* 231 F.2d 59 (5th Cir.); *cert. denied,* 352 U.S. 828, 77 S.Ct. 41, 1 L.Ed.2d 50 (1956) (statutory procedure for review of ICC orders is applicable even where suit is one to enjoin action *authorized* by the Commission rather than one to enjoin an order of the Commission) (emphasis in original).

Where exclusive jurisdiction is mandated by statute, a party cannot bypass the procedure by characterizing its position as a defense to an enforcement action. The exclusive jurisdiction of the courts of appeals cannot be evaded simply by labeling the proceeding as one other than a proceeding for judicial review. *Cf. Minnesota v. O'Neal,* 472 F.Supp. 905, 908 (D.Minn.1979) (where exclusive jurisdiction is provided by statute, plaintiff cannot bypass the procedure "by labeling its requested relief 'mandamas.'"). In determining that the Preemption Order was ultra vires, the district court countenanced just such an evasion.

The exclusive review procedure provided for by Congress in section 2342 serves important policy considerations. It insures

---

**10.** The Arkansas Commission also contends that district courts possess jurisdiction to attack the validity of administrative rulings that are ultra vires of the agency's authority under the patent violation doctrine established in *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). In *Leedom,* the district court was found to have jurisdiction on the ground that the National Labor Relations Board's action was in violation of an explicit statutory requirement. *See Indep. Cosmetic Mfrs. v. Dep't of Health, Education & Welfare,* 574 F.2d 553 (D.C.Cir. 1978), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978). We cannot conclude that the Preemption Order constitutes a patent violation of the FCC's authority.

**11.** Six district courts have enjoined state regulatory commissions from disobeying the Preemp-

tion Order under section 401(b), and have properly declined to review the Order's validity. *Mountain States Tel. & Tel. Co. v. Dep't of Public Serv. Regulation,* 588 F.Supp. 5 (D.Mont.1983); *Southwestern Bell Tel. Co. v. State Corp. Comm'n,* No. 83–4090, (D.Kan. Apr. 8, 1983); *South Central Bell Tel. Co. v. Louisiana Public Service Comm'n.,* 570 F.Supp. 227, 233 (M.D.La. 1983); *New England Tel. & Tel. Co. v. Public Utilities Comm'n of Maine,* 570 F.Supp. 1558, 1577, 1581 (D.Me.1983); *Chesapeake & Potomac Tel. Co. v. Public Service Comm'n,* 560 F.Supp. 844, 848–49 (D.Md.1983); *Pacific N.W. Bell Tel. Co. v. Washington Utility and Transp. Comm'n.,* 565 F.Supp. 17, 21 (W.D.Wash.1983).

that review will be vested in an appellate panel and not in a single district judge. It guarantees that agency action will be reviewed on the basis of the administrative record rather than a district judge's de novo fact-finding. It also avoids the possibility of conflicting litigation where two courts have concurrent jurisdiction to resolve the same issues.[12] The legislative history of section 2342 also demonstrates that one of its purposes was to eliminate the duplication of effort that resulted under prior law when appeals from agency orders were tried de novo in the district courts. H.Rep. No. 2122, 81st Cong., 2d Sess. 3–4 (1950), U.S.Code Cong.Serv.1950, p. 4303. Allowing the Arkansas Commission to interpose its defense of invalidity in this section 401(b) enforcement action would compromise all of these policy concerns. *Cf. Tampa Phosphate R.R. Co. v. Seaboard Coast Line R.R. Co.,* 418 F.2d 387, 399 (5th Cir.1969), *cert. denied,* 397 U.S. 910, 90 S.Ct. 907, 25 L.Ed.2d 90 (1970) (the invalidity of an ICC order was not reviewable by a single-judge trial court when statutory provisions governing review confined such challenges to a three-judge court.) This is especially true in the present case. The Arkansas Commission intervened in the Fourth Circuit appeal,[13] but did not request a stay of the Preemption Order. Instead, in response to Southwestern Bell's rate application, it expressly defied the Order, and later raised its invalidity as a defense to Southwestern Bell's enforcement action. If the district court could exercise jurisdiction in these circumstances, then the application of section 2342 could be consistently avoided simply by waiting until an enforcement action is brought in the district court and then interjecting what amounts to an action for review as a defense. This would undermine the judicial structure Congress created when it enacted section 2342.

The Arkansas Commission also contends that the district court may determine the validity of the FCC order in an enforcement proceeding because 47 U.S.C. § 401(b) requires the district court issuing an injunction to determine whether the FCC order was "regularly made." The Arkansas Commission argues that "regularly made" requires both procedural and substantive regularity. We believe that the term "regularly made" as used in section 401(b) refers only to procedural regularity; otherwise, the exclusive provision of the statutory review procedure set forth in 28 U.S.C. § 2342(1) and 47 U.S.C. § 402(a) would be superfluous. *See South Central Bell Tel. Co.,* 570 F.Supp. at 233–34; *New England Tel. & Tel. Co.,* 570 F.Supp. at 1574; *Chesapeake & Potomac Tel. Co.,* 560 F.Supp. at 848.

FCC orders become effective upon issuance unless stayed by the FCC or a reviewing court. 47 U.S.C. § 408 (1976). The FCC is not required to seek enforcement of its orders before they become effective. Therefore, the Preemption Order was binding on the Arkansas Commission and was to be accorded the same preemptive effect as federal statutes. *Fidelity Federal Savings & Loan Assn. v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). The district court had no jurisdiction to deny enforcement of the FCC order on the basis that it was ultra vires.

## II.

47 U.S.C. § 401(b) provides that any party injured by a person's failure to obey

---

**12.** *See generally Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals,* 88 Harv.L.Rev. 980, 983–85 (1975).

**13.** The Arkansas Commission argues that it was not a party to the FCC proceeding nor to the appeal to the Fourth Circuit. The record reveals otherwise. The Arkansas Commission filed comments in the FCC proceeding which resulted in the Preemption Order and stipulated that it intervened and is a party to the Fourth Circuit appeal. It participated in arguments made by twenty other state regulatory commissions in that appeal. We think it clear, therefore, that the Arkansas Commission was a party to the FCC proceeding and is a party to the appeal. *See Port of Boston Marine Terminal Assn. v. Rederi. Transatlantic,* 400 U.S. 62, 71–72, 91 S.Ct. 203, 209–210, 27 L.Ed.2d 203 (1970).

an FCC order may apply to a district court for enforcement of that order. Such enforcement may be by "writ of injunction or other proper process" upon a finding that the order was (1) regularly made; (2) duly served; (3) disobeyed; and that (4) a party was thereby injured. The district court examined Southwestern Bell's petition for injunctive relief under both section 401(b) and the traditional equitable analysis enumerated in *Dataphase Systems*, 640 F.2d at 113. It concluded that Southwestern Bell's petition failed under both standards. We believe that only the statutory criteria need be satisfied and that the traditional equitable standard is not applicable where, as in this case, we have a clear violation of a self-executing order of an administrative agency, *see* 47 U.S.C. § 408, which is accorded the same preemptive effect as a federal statute, *Fidelity Federal Savings & Loan Assn.*, *supra*, and where substantive review of that order is vested in another court, *see* 28 U.S.C. § 2342(1), 47 U.S.C. § 402(a). *Cf. United States v. City and County of San Francisco*, 310 U.S. 16, 30, 60 S.Ct. 749, 756, 84 L.Ed. 1050 (1940) (city's violation of restriction attached to land grant may be enjoined under enforcement provision without "a balancing of equities or ... the invocation of the generalities of judicial maxims...."). Congress has specifically created in section 401(b) an exclusive mechanism for enforcing FCC orders, and, under these circumstances, it must be used.

■ The parties stipulated that the FCC order was "regularly made and duly served." The district court concluded that

"regularly made" includes the substantive requirement that the FCC have jurisdiction to issue the order. As we have demonstrated, the district court erred in reaching this conclusion, and therefore the stipulation between the parties satisfies the first and second criteria of section 401(b). The Arkansas Commission unilaterally concluded that the FCC lacked jurisdiction and deliberately disobeyed the Preemption Order.[14] Finally, the district court concluded, and we agree, that Southwestern Bell is both a party and is suffering injury[15] within the meaning of section 401(b).

Once the four elements of section 401(b) are satisfied, the statute directs that "the court *shall* enforce obedience to such order by a writ of injunction or other proper process...." (emphasis supplied). We do not read "shall" as withholding all discretion from the district court with respect to issuance of the injunction. *Hecht Co. v. Bowles*, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944). Under the circumstances of this case, however, we conclude that denial of injunctive relief would be an abuse of discretion.

■ As indicated previously, the Arkansas Commission filed comments with the FCC. It stipulated that it is a party to the Fourth Circuit appeal and did not request a stay of the Order.[16] The Arkansas Commission then adopted depreciation methods inconsistent with those required by the Order. The Arkansas Commission's order responding to Southwestern Bell's application for a rate increase demonstrates studied consideration of its defiance of the Preemp-

**14.** *See* page 904, *supra*.

**15.** Section 401(b) requires only that a party be injured by disobedience to an FCC order. The traditional equitable criterion of irreparable injury is thus inapplicable. *Atchison, T. & S.F. Ry. Co. v. Lennen*, 640 F.2d 255 (10th Cir.1981). The record reveals that if Southwestern Bell is permitted to adopt FCC-mandated depreciation methods, its yearly intrastate revenue requirement would increase by approximately $11,256,-223. We further note that the current loss of funds is especially critical because of competitive pressures resulting from the restructuring of the telephone industry. It is also clear that

Southwestern Bell suffers injury by being forced to observe two contradictory sets of regulations, thus exposing it to potential penalties for noncompliance. *See Public Utilities Comm'n of Ohio v. United Fuel Gas Co.*, 317 U.S. 456, 469, 63 S.Ct. 369, 376, 87 L.Ed. 396 (1943). Under these circumstances, Arkansas' retroactive recovery statute, which entitles a public utility to collect with interest revenues that were unlawfully withheld, does not insulate Southwestern Bell from injury in the present case. *See* Ark. Stat.Ann. § 73–217(c)(1)(ii) (Supp.1983).

**16.** J.A. at 253 (Stipulation No. 11).

tion Order. This is disobedience that section 401(b) was clearly designed to remedy. In view of this conduct, and as the elements of section 401(b) have been satisfied, we believe that it would be an abuse of discretion to deny equitable relief to Southwestern Bell. We conclude that the proper procedure is to remand to the district court with instructions to enter the injunction. *See Thornton v. Carter*, 109 F.2d 316, 319 (8th Cir.1940).

The validity of the FCC's order is currently before the Fourth Circuit. We express no opinion on the issues that will be properly determined by that court. Accordingly, we direct that the district court enter its order enjoining the Arkansas Commission from refusing to follow the FCC order until such time as the Fourth Circuit has issued its decision. At that time, the district court should consider further relief consistent with the Fourth Circuit's decision. If the FCC's order is found to be valid, a permanent injunction may be required. If found to be invalid, and Southwestern Bell has collected increased revenues on the basis of the order, it may be required to refund such overpayments.