**PACIFIC NORTHWEST BELL TELEPHONE COMPANY, a Washington corporation, Plaintiff,**

v.

**WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION, Robert W. Bratton, Mary D. Hall, and A.J. Pardini, Defendants.**

**No. C83–214C.**

United States District Court, W.D. Washington, at Seattle.

March 10, 1983.

---

Thomas R. Beierle, Seattle, Wash., for plaintiff.

Asst. Atty. Gen. Douglas N. Owens, Olympia, Wash., for defendants.

## MEMORANDUM OPINION

COUGHENOUR, District Judge.

THIS MATTER comes before the Court on plaintiff's application for a preliminary injunction pursuant to 47 U.S.C. § 401(b) or 28 U.S.C. § 1337.

## FACTS

In 1973, pursuant to the authority vested in it by 47 U.S.C. § 220(b), the Communications Act of 1934, the Federal Communications Commission ("FCC") began a study of depreciation practices in the telephone industry. In 1980, after reviewing various proposals, conducting hearings and soliciting comments from utility companies, state regulatory commissions, members of the accounting profession and other interested parties, the FCC ruled that it was adopting the Straight Line Equal Life Group ("SIELG") and Remaining Life Group depreciation methods in addition to the Straight Line Vintage Life ("SLVL") method. *Report and Order* in FCC Docket No. 20188 (December 5, 1980).

In 1982, plaintiff, Pacific Northwest Bell ("PNB"), went before the FCC for its triennial review of its depreciation schedule. During the summer of 1982, the depreciation staffs of the FCC, the Washington Utilities and Transportation Commission ("WUTC"), and PNB met to negotiate new depreciation parameters. PNB alleges that the WUTC staff was in substantial agreement with the depreciation rates proposed by the FCC with the exception of the rates proposed for "Central Office Equipment— Electronic" in which case the WUTC staff preferred a higher rate of depreciation. These allegations are not denied by the WUTC. On December 14, 1982, the FCC released its *Order* in Docket No. 82–542. That Order set detailed depreciation schedules for Pacific Northwest Bell and eight other public utility companies.

On January 6, 1983, the FCC issued its *Memorandum Opinion and Order* in CC Docket No. 79–105. In that Opinion the FCC determined that "... inconsistent state prescribed depreciation rates are preempted by the Communications Act and are accordingly void." Further, the FCC held that "[s]ince the depreciation method utilized is a material part in determining the rate to be applied, state commissions are also precluded from departing from the de-

preciation methods prescribed by the Commission." *Ibid.,* at pp. 16, 17.

On May 5, 1982, PNB filed certain tariff revisions with the WUTC and requested a rate increase. The WUTC suspended the tariff revisions pending final determination by the Commission. On February 10, 1983, the WUTC issued its *Order* in Cause No. U–82–19. In that Order the WUTC declined to allow a rate increase to generate revenue to offset the $38.8 million increase in depreciation expense being incurred as a result of the FCC's Orders. In reaching this conclusion the WUTC stated that the FCC Order was not dispositive of the depreciation issues as it was still subject to appeal. Further, the WUTC stated that even if the FCC Order was ultimately sustained, preemption would be confined to the area of federal concern, namely, competitive services. Finally, the WUTC stated that it considered the entry of judgment in *U.S. v. AT & T* on August 24, 1982 to have resulted in constructive delivery to AT & T of the assets that PNB will be required to transfer pursuant to divestiture. Therefore, the WUTC reasoned, changes in the depreciation rates and methods would result in an imbalance in the burden of capital recovery between customers of PNB and customers of AT & T. Upon receipt of this ruling PNB filed a motion for reconsideration with the WUTC and this petition for preliminary relief. In its petition for preliminary relief, PNB alleges that it is required to book $100,000 of depreciation expense per day in order to comply with the FCC Order, for which it has been denied offsetting revenues by the WUTC. The FCC was permitted to appear as *amicus curiae.*

JURISDICTION

Plaintiff, Pacific Northwest Bell, invoked the jurisdiction of this Court pursuant to 47 U.S.C. § 401(b) and 28 U.S.C. § 1337.

47 U.S.C. § 401(b) provides in relevant part:

If any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, the Commission or any party injured thereby, or the United

States, by its Attorney General, may apply to the appropriate district court of the United States for the enforcement of such order. If, after hearing, that court determines that the order was regularly made and duly served, and that the person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such person ... from further disobedience of such order, or to enjoin upon it or them obedience to the same.

28 U.S.C. § 1337 provides in relevant part:

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies . . . .

The Court notes that the question of whether there is jurisdiction under either of these statutes in an action for injunctive relief brought by a private party against a state commission is virtually a question of first impression. In *Brookhaven Cable TV Inc. v. Kelly,* 428 F.Supp. 1216 (N.D.N.Y. 1977), the court was confronted with an action for a declaratory judgment that the FCC had preempted the field of charges for cable television. The action was brought by five cable television companies against the individual commissioners of the New York Communications Commission. The FCC and the United States intervened as plaintiffs. Jurisdiction was alleged on the basis of 47 U.S.C. § 401(b), 28 U.S.C. § 1337, and a number of other general jurisdictional statutes. In that case the court found that jurisdiction existed under 28 U.S.C. § 1337 because the charges proposed by the New York Commission would be a "restraint" of commerce. The court did not discuss the other requirements of 28 U.S.C. § 1337 and declined consideration of the other proposed jurisdictional statutes. *Ibid.,* at p. 1221, n. 21 (affirmed without discussing jurisdiction, 573 F.2d 765 (2nd Cir.1978)).

This Court finds that the question of whether jurisdiction exists under 28 U.S.C.

§ 1337 depends on whether the action "arises under" an Act of Congress. For guidance on that question, the Court looked to *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916). In that case Justice Holmes stated, "A suit arises under the law that creates the cause of action." *Ibid.,* at p. 586. Thus, this Court concludes that in order for jurisdiction to exist under 28 U.S.C. § 1337, the Act of Congress upon which plaintiff bases its claim must create a cause of action. Here, plaintiff claims that a cause of action is created in 47 U.S.C. § 401(b). Thus, the cause of action that is a prerequisite to jurisdiction, if it exists, must be found in § 401(b). During oral argument counsel for the FCC, in his role as *amicus curiae,* concurred in this analysis of the jurisdictional issue.

Defendant, WUTC, contends that the Court lacks jurisdiction under § 401(b) because the WUTC is not a "person" within the meaning of the statute. 47 U.S.C. § 153 provides in relevant part:

For the purposes of this chapter, unless the context otherwise requires—

. . . .

(i) "Person" includes an individual, partnership, association, joint-stock company, trust, or corporation.

. . . .

(t) "State commission" means the commission, board, or official (by whatever name designated) which under the laws of any State has regulatory jurisdiction with respect to intrastate operations of carriers.

Thus, the WUTC argues that § 401(b) provides jurisdiction for the district court to enforce orders of the FCC only when those orders are violated by a person. Since the definition of "person" in the statute does not include state commissions or commissioners, WUTC contends the district court is without jurisdiction.

The question before this Court is whether the term "person" as used in § 401(b) is limited to those specific entities defined as persons in § 153(i). Put another way, the question is whether Congress intended to exclude state commissions from the group of "persons" against whom enforcement action could be taken under § 401(b). In answering these questions, the Court notes that Congress provided that the definitions in § 153 were applicable "unless the context otherwise requires." Further, in defining most of the terms in § 153 Congress used the word "means" (i.e., "State commission means. . . ."); whereas the term "includes" was used in only five of the definitions. The Court notes that the term "includes," as generally used, is not as comprehensive as the term "means" and that, therefore, on the five occasions where Congress used the term "includes" rather than the term "means" it probably did not intend to exclude other entities from the list where the term as used in "context otherwise require[d]" their inclusion.

Congress provided for the civil enforcement and review of the Communications Act and orders promulgated under it in 47 U.S.C. §§ 401–415. In reviewing these sections the Court notes that 47 U.S.C. § 408 provides that FCC orders shall be in force until suspended or set aside by the FCC or a court of competent jurisdiction. 47 U.S.C. § 405 provides that after the promulgation of a Commission order, any aggrieved party may petition the Commission for rehearing. 47 U.S.C. § 402 provides that Commission orders may be appealed to the United States Courts of Appeals. Upon petitioning for rehearing or upon appeal, the person seeking review may apply for a stay of the order. The WUTC could have invoked either or both of these provisions. However, rather than seeking review of and interlocutory relief from the FCC Order in question here, the WUTC chose to ignore the Order. Now the WUTC comes before this Court and asserts that it is without jurisdiction to enforce the Order.

47 U.S.C. § 401 provides the only means through which the FCC or a private party can seek the enforcement of a valid FCC order or provision (there are some additional provisions elsewhere in the statute which specifically address the enforcement of orders against carriers by the FCC).

§§ 401(a) and (c) are directed to the prosecution of violations of *provisions* of the chapter by the FCC and § 401(b) is directed to enforcement of FCC *orders.* Since § 401(b) is the only method by which anyone, including the FCC, could secure enforcement of its orders, the Court is inclined to believe that Congress intended this provision to apply to all violations. Although the Court recognizes the fact that Congress was very sensitive to the delicate balance of power as between the FCC and state commissions in the area of regulating communications, the Court believes that Congress addressed these concerns by providing ample provision for review of FCC orders. Congress could hardly have intended to allow a state commission to refuse the opportunity to seek review of a FCC order and then to claim immunity from enforcement of the order on the grounds that it was not a "person" within the meaning of the enforcement section of the statute.

■ Rather, this Court finds that Congress intended FCC orders to be enforceable until suspended through proper process (§ 408). Further, the Court finds that there is no rational basis for excluding state commissions from the group of persons against whom enforcement may be sought since they clearly have the same opportunity as any other person to seek review and suspension of orders with which they disagree.

Thus, the Court finds that there is jurisdiction under 47 U.S.C. § 401(b).

INJUNCTIVE RELIEF

Having found that jurisdiction exists, the Court must consider whether injunctive relief is appropriate in this case. The standard for injunctive relief is found in § 401(b), which provides in relevant part:

If, after hearing, that court determines that the order was regularly made and duly served, and that the person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process....

In this case there is no dispute that the Order was regularly made, and there appears to be no dispute that WUTC was duly served with a copy of the Order.

Next the WUTC alleges that it has not violated the Commission Order because the Order has not told it to do anything. Yet, in its ratemaking opinion the WUTC itself acknowledged that its decision ignored the mandates of the FCC Order. As noted earlier, the January 6, 1983 FCC Order precludes state commissions from departing from depreciation methods prescribed by the FCC in their ratemaking proceedings. In this case, the WUTC admittedly did not consider the increased revenue needs of PNB occasioned by the $38.8 million of depreciation the FCC has required them to show on their books. Indeed, to this day the WUTC contends that PNB must make an independent showing of the reasonableness of its depreciation expense despite the fact that rates of depreciation have been set by the FCC. The assertion by the WUTC that the Order applies only to competitive services is clearly erroneous. The FCC has explicitly set the rates of depreciation to be applied to all the assets of PNB regardless of whether or not they are used for the provision of competitive services. The question of whether the FCC has the statutory authority to preempt the entire area of depreciation charges is not before this Court. That decision is not subject to review by the district court. *City of Rochester v. Bond,* 603 F.2d 927 (D.C.Cir.1979).

■ Having found that the statutory preconditions of injunctive relief have been met, the question of whether injunctive relief is appropriate in this case arises. On this issue, the Court finds that PNB is being forced to forego substantial revenues to offset expenses it must show on its records through the action of the WUTC. Further, the Court notes that there is no means for retroactive recapture of these revenues if PNB ultimately prevails. However, the Court notes that the WUTC may allow the rate increase subject to refund if the FCC's preemption decision is overturned. Therefore, the equities in this case clearly tip the balance in favor of injunctive relief.

Accordingly, the motion for Preliminary Injunction is GRANTED.