## SOUTH CENTRAL BELL TELEPHONE COMPANY

v.

## LOUISIANA PUBLIC SERVICE COMMISSION, Thomas E. Powell, George J. Ackel, Ed Kennon, Louis Lambert and John F. Schwegmann.

Civ. A. No. 83–557–A.

United States District Court,
M.D. Louisiana.

June 27, 1983.

On Motion For New Trial Aug. 1, 1983.

---

228

Herschel Abbott, Jr., New Orleans, La., for plaintiff.

Michael P. Fontham, New Orleans, La., Marshal B. Brinkley, Louisiana Public Service Comm., Baton Rouge, La., Shelly Zwick, Asst. U.S. Atty., Baton Rouge, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN V. PARKER, Chief Judge.

Plaintiff, South Central Bell Company, brings an action for declaratory and injunc-

tive relief against the defendants, the Louisiana Public Service Commission and its individual commissioners, Thomas E. Powell, George J. Ackel, Ed Kennon, Louis Lambert and John G. Schwegmann, Jr. This matter is before the court on plaintiff's motion for a preliminary injunction. A hearing was held and the motion was submitted upon the submission of briefs. The court has subject jurisdiction under 28 U.S.C. § 1337.

## FINDINGS OF FACT

1) Defendant, Louisiana Public Service Commission, is authorized by the laws of the state of Louisiana to regulate the intrastate rates, services, facilities and practices of South Central Bell Company insofar as that company is engaged in the business of supplying utility service to the public with the state of Louisiana.

2) On May 3, 1982, South Central Bell filed tariff revisions with the Louisiana Public Service Commission seeking an increase of $238,600,000.00 in annual revenues in Docket No. U–15445.

3) As part of the justification for the increase, plaintiff relied upon the Federal Communications Commission's (FCC) 1980 adoption of the Remaining Life and Straight Line Equal Life Group depreciation method in the Order released December 5, 1980, in Docket 20188, 83 F.C.C.2d 267 (1980), on reconsideration 87 F.C.C.2d 916 (1981). Plaintiff further relied upon the F.C.C. Order which requires the expensing of station connection released March 30, 1981, CC Docket No. 79–105, 85 F.C.C.2d 818 (1981).

4) On December 30, 1982, the F.C.C. issued an Order in Docket No. 82–576 which prescribed depreciation methods for South Central Bell equipment. The Louisiana Public Service Commission had an opportunity to participate in the hearings which culminated in the formation of the Order.

5) No appeal was filed from the December 30, 1982 Order and it is now final.

6) On January 6, 1983, the F.C.C. released its Memorandum Opinion and Order

adopted December 22, 1982, in CC Docket No. 79–105 which held that the F.C.C.'s depreciation methods preempt inconsistent state depreciation methods and rates. The Order also contained a provision requiring the Secretary of the F.C.C. to serve a copy of the Order on each state commission. According to William J. Tricarico, Secretary of the F.C.C., members of his staff mailed copies of the Order to all state public service commissions, including defendant, on or about January 7, 1983.

7) The Order was published in the Federal Register on January 19, 1983.

8) The testimony of Bruce Louiselle indicates that the Louisiana Public Service Commission had actual knowledge of the F.C.C.'s January 6, 1983 Order and the commission so concedes.

9) The Louisiana Public Service Commission continues to prescribe methods of depreciation other than those prescribed by the F.C.C., the straight line equal life group method. The last official order of the Louisiana Public Service Commission which addresses regulation of depreciation rates for plaintiff's equipment in Louisiana is dated June 30, 1981. It states: "Depreciation rates for imbedded terminal equipment, and all other equipment historically regulated in the intrastate jurisdiction, will be set according to policies approved in this State. They will not be established to further a policy of 'deregulation' of the F.C.C." The Order expresses the intent of the Commission in that it provides that the Order is "issued to set forth the scope of the regulatory authority over telephone tariffs that is exercised, and will continue to be exercised absent a contrary and authoritative judicial order, by the Louisiana Public Service Commission."

10) The Louisiana Public Service Commission requires plaintiff to employ a depreciation technique known as Whole Life straight line depreciation. When an asset is acquired, a fixed life is assigned to it and the costs of depreciation are allocated over the assigned period regardless of the actual life of the asset. Recovery of these costs

occurs at a slow rate at the beginning of the life of the asset.

11) The technique now prescribed by the F.C.C., the remaining life method, evaluates the remaining life of the assets at specified intervals and the remaining value of the asset is depreciated over its remaining life, regardless of the length of its actual life to date.

12) The remaining life method results in greater recovery of costs early in the life of the asset. The same is true of the straight line equal life group technique.

13) The actual expenses of plaintiff, including costs associated with depreciation of assets, are one factor evaluated by the Louisiana Public Service Commission in determining what rates South Central Bell will be allowed to charge.

14) If depreciation of plaintiff's assets is computed according to the method prescribed by the F.C.C. rather than according to the technique employed by the Louisiana Public Service Commission, its expenses will be substantially increased.

15) The Louisiana Public Service Commission also requires that station connection costs be capitalized, rather than expensed, as required by the F.C.C. Expensing Order.

16) The use of the F.C.C. mandated accounting procedures will result in accelerated depreciation and increased expenses which require an increase in rates. The need for additional revenue originates in the settlement of the government's antitrust action against American Telephone & Telegraph Co. and is one of the "benefits" to the public of the break-up of the Bell System into separate entities.

17) Plaintiff's need for additional cash flow is indisputable and delay in switching to F.C.C. mandated accounting procedures will deny plaintiff the additional cash flow required, thus impairing its financial position and cash flow which it is presently losing because of the actions of the Louisiana Public Service Commission. Such losses are irretrievably lost, even though a rate increase should be granted in the future.

## CONCLUSIONS OF LAW

■ 1) The terms of the Federal Communications Act of 1934 expressly grant to the F.C.C. the authority to enter orders effectuating the provisions of the Act, 47 U.S.C. §§ 151, 152(a), 154(i). In the exercise of its authority, the F.C.C. has broad discretionary power, see e.g. *United States v. Southwestern Cable Company,* 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968).

2) In keeping with its statutory grant of power, the F.C.C. has held that, under Section 220(b) of the Act, states may not prescribe depreciation rates which are inconsistent with the depreciation rates and policies mandated by the F.C.C., see Memorandum Opinion and Order, CC Docket No. 79–105, January 6, 1983. 48 Fed.Reg. 2324 (1983).

■ 3) The Supremacy Clause of the United States Constitution, Article XI, cl. 2, dictates that federal laws preempt those enacted by the states when the latter are in conflict with the purposes of Congress, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

4) The January 6, 1983 Memorandum Opinion and Order carefully considers the impact of inconsistent state imposed methods of depreciation computation on intrastate communications and concludes that their continued use would frustrate the objectives of Congress expressed in the Federal Communications Act. The order clearly states: "... [W]e find it imperative to declare today that inconsistent state prescribed depreciation rates are preempted by the Communication Act and are accordingly void." 48 Fed.Reg. at 2330 (1983) and: "... Since the depreciation method utilized is a material part in determining the rate to be applied, state commissions are also precluded from departing from the depreciation methods prescribed by the Commission. Thus, the *Expensing Order* is binding upon state commissions and they must expense additions to inside wiring in accordance with the plan established therein..." Id., at 2230, and "... Accordingly, we find that

this Commission's depreciation policies and rates, including the expensing of inside wiring, preempt inconsistent state depreciation policies and rates." (Id. at 2331)

■ 5) The rulings and orders of administrative agencies carry the full force of federal law and are accorded the same preemptive effect as federal statutes, *Fidelity Federal Savings & Loan Association v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

■ 6) The Louisiana Public Service Commission continues to require the plaintiff to employ methods of computing depreciation which conflict with those specified by the F.C.C. and, in so doing, are in violation of federal law.

7) Plaintiff asks the court to grant injunctive relief in accordance with the provisions of 47 U.S.C. § 401(b) which allows any party, injured by another person who neglects to comply with any order of the Commission, to ask the court for enforcement of the order through issuance of an injunction.

8) After a hearing, the court "shall enforce obedience to such order by a writ of injunction . . ." if the court determines that the order was "regularly made and duly served" and that the defendant is acting in violation of the order. 47 U.S.C. § 401(b).

9) The first of the statutory requirements of § 401(b) has already been met, the defendants are clearly acting in defiance of the F.C.C.'s January 6, 1983 Order.

■ 10) Whether the order was regularly made and duly served is an issue which has spawned much dissent between the parties. Defendants admit that the Louisiana Commission actually received a copy of the order but insist that they are entitled to personal service of the order as a prerequisite to being restrained for non-compliance with its terms. Since the Act itself does not specify the manner in which service is to be made, defendants reason that the provisions of the Federal Rules of Civil Procedure, and consequently the Louisiana Code of Civil Procedure, are applicable. Apparently, no other court has yet been called upon to

construe these terms. Nonetheless, defendant's argument cannot succeed. The scope of the Federal Rules of Civil Procedure are expressed in Rule 1, which states that the Rules govern all civil actions in the district courts of the United States. Obviously, proceedings before the F.C.C. are not included in this category. Such a conclusion is further supported by the provisions of 47 U.S.C. § 154(j) which empower the F.C.C. to prescribe its own procedural regulations, *FCC v. Schreiber,* 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965).

11) In the present case the applicable procedural regulations are contained in 47 C.F.R. § 0.445(a)–0.445(e). § 0.445(a) states that "All opinions and orders of the Commission . . . are mailed to the parties and, as part of the record, are available for inspection. . . ." Subsection (c) further explains that "All rule making documents are published in the Federal Register." The effect of compliance with the provisions listed above is described in § 0.445(e), which states, inter alia, "If the documents described in paragraphs (a)–(d) of this section are published in the Federal Register, the F.C.C. Reports or Pike and Fischer Radio Regulations, they may be relied upon, used or cited as precedent, by the Commission or private parties in any matter. If they are not so published, they may not be relied upon, used or cited as precedent, except against persons who have actual notice of the document in question or by such persons against the Commission. No person is expected to comply with any requirement or policy of the Commission unless he has actual notice of that requirement or policy or unless a document stating it has been provided in this paragraph."

■ 12) There is absolutely no evidence in the record to indicate that the F.C.C. in any way deviated from the regulations cited above. There is apparently no dispute that the parties to the F.C.C. proceeding which led to issuance of the January 6, 1983 Order were served in accordance with 47 C.F.R. § 0.445(a). Although the pertinent regulations do not require service of the

order on one not a party to the proceeding, the Secretary of the F.C.C. nonetheless served the Louisiana Public Service in keeping with the standard practices followed by the F.C.C. In addition to the fact that the Louisiana Public Service Commission had actual knowledge of the Order, it was also published in the Federal Register. Under these circumstances, the court must conclude that the defendants have failed to rebut the presumption of correctness which attaches to the acts of government officials, *FCC v. Schreiber,* 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965); *Environment Defense Fund, Inc. v. Alexander,* 614 F.2d 474 (5th Cir.1980). Accordingly, the court holds that the F.C.C. acted in accordance with the law and the Order, dated January 6, 1983, CC Docket No. 79–105 was regularly made and duly served for purposes of 47 U.S.C. § 401(b).

■ 13) Finally, the court is called upon to decide what manner of harm must be demonstrated before plaintiff is entitled to invoke the protection of § 401(b). Under the terms of the statute itself, only a person injured by the defendant's non-compliance with an F.C.C. order may seek injunctive relief. The question is whether the plaintiff must show mere injury or meet the traditional equitable requirement of irreparable injury, see *Canal Authority v. Callaway,* 489 F.2d 567 (5th Cir.1974). Generally, when the injunction is the "creature of the statute," no showing of irreparable injury is required once the statutory requirements have been met, see e.g. *Hecht v. Bowles,* 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944), *SEC v. Mize,* 615 F.2d 1046 (5th Cir.1980); *UV Industries v. Posner,* 466 F.Supp. 1251 (D.Me.1979).

■ 14) As noted earlier, the actions of the Louisiana Public Service Commission have clearly caused injury to plaintiff. By failing to employ the F.C.C.'s method of computing the rate of depreciation of plaintiff's assets, the defendants were able to justify the decision to deny plaintiff's request for a rate increase. Had F.C.C. policies and rates been used, the substantial increase in expenses reflected would have

required that a rate increase be granted in keeping with the policies expressed in the January 6, 1983 Order of the F.C.C. Any rate increase denied in the present cannot be recovered in the future. Under the terms of the 401(b), the court is convinced that plaintiff has shown sufficient injury to warrant the issuance of an injunction, as was each of the other district courts to which this issue has been presented. *Southwestern Bell Telephone Company v. The State Corporation Commission of the State of Kansas, et al,* C.A. No. 83–7090, (D.C. Kan.1983); *Pacific Northwest Bell Telephone Company v. Washington Utilities and Transportation Commission, et al,* 565 F.Supp. 17 (D.C.Wash.1983); *The Chesapeake and Potomac Company of Maryland v. Public Service Commission of Maryland,* 560 F.Supp. 844 (D.C.Md.1983).

■ 15) Defendant protests that the F.C.C. had suddenly reversed its posture of 40 years and that this court should consider the impact of any rate increase upon the public, especially upon the poor. The answer to defendant's assertion is that it is beyond the power of this court to review the propriety or legality of an order of the Federal Communications Commission since the Congress has vested that jurisdiction only in the court of appeals. 47 U.S.C. § 402; 28 U.S.C. § 2342(1).

■ 16) Defendant also asserts that the Johnson Act, 28 U.S.C. § 1342 precludes the court from enjoining it. The Johnson Act provides that: "The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order effecting rates chargeable by a public utility and made a State administrative agency or a rate-making body of a State political subdivision, where: (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and (2) The order does not interfere with interstate commerce; and (3) The order has been made after reasonable notice and hearing; and (4) A plain, speedy and efficient remedy may be had in the Courts of such a State." The Johnson Act applies

only if *all four* of its enumerated factors exist. *DeKalb County v. Southern Bell Tel. & Tel. Co.,* 358 F.Supp. 498 (N.D.Ga.1972), aff'd 478 F.2d 700 (5th Cir.1973). Here the very first requisite for Johnson Act application is not met. Plaintiff asserts jurisdiction under Section 401(b) of the Communications Act and the preemptive effect of the F.C.C.'s order, not upon any alleged repugnance of the defendant's action to the Constitution. *Chesapeake and Potomac Tel. Co. of Md. v. Public Service Comm. of Md., supra.* Thus the Johnson Act does not bar injunctive relief. Likewise, where the Congress specifically authorizes injunctive relief by a federal court notions of comity between federal and state systems are no longer applicable.

■ 17) Finally, defendant argues that in considering plaintiff's chances for success upon the merits we must consider the circumstances surrounding the F.C.C.'s actions and whether its orders will ultimately be upheld by the courts to which the Congress has entrusted review of the orders. That is simply a request to do indirectly that which the court may not do directly—review action of the F.C.C.

18) The court is not convinced, however, that the scope of the injunction should be as broad as plaintiff has requested. Plaintiff properly asks the court to enjoin the defendants from employing any methods of depreciation which are not in accordance with the January 6, 1983 and December 22, 1982 Orders of the F.C.C. In addition, plaintiff requests that the Louisiana Public Service Commission also be commanded to "issue appropriate orders within seven days permitting South Central Bell to implement, subject to refund with legal interest thereon, tariffs in accordance with the depreciation rates and methods prescribed by the F.C.C." Were such an order to issue, the court would in effect, become directly involved in the rate making process. Indeed, the January 6, 1983 Memorandum Opinion and order clearly recognizes that intrastate rate making is still within the exclusive province of the states. 47 U.S.C. § 152(b) p. 12, paragraph 30. Plaintiff insists that defendant's past activities show that it will not in good faith comply with the order of this court requiring that it follow F.C.C. policies and that the court should state precisely the rate increase to be granted—as the court did in *Pacific Northwest Bell Tel. & Tel. Co. v. Trans. Comm., supra.* While depreciation schedules are an important factor in rate making, they are only one factor among many and this court is not willing to assume in advance that the Louisiana Public Service Commission will not comply, in good faith with the orders of the court. We will follow the procedure of Judge Northrop in the Maryland case and require the defendant to set new rates within ten days utilizing F.C.C. policies and rates.

## ON MOTION FOR NEW TRIAL

This matter is before the court upon a motion for new trial filed on behalf of defendant, the Louisiana Public Service Commission, and upon a motion to modify the order for preliminary injunction which the court previously entered and alternatively for a rule to show cause why the defendant should not be held in contempt, filed on behalf of plaintiff, South Central Bell Telephone Company. This action was initiated by South Central Bell under Section 401(b) of the Federal Communications Act of 1934, 47 U.S.C. § 401(b), seeking injunctive relief requiring the Public Service Commission to adopt accounting procedures which have been prescribed by the Federal Communications Commission for the purpose of fixing intrastate telephone rates. The court heard a motion for preliminary injunction and on June 27, 1983, entered findings of fact and conclusions of law and issued a preliminary injunction requiring that the Public Service Commission abide by the F.C.C. order regarding depreciation rates and methodologies and to "issue an order which provides for the collection of rates by plaintiff sufficient to recover the intrastate revenue requirement resulting from the F.C.C.-prescribed depreciation rates and methodologies." Establishment of a refund procedure was directed in case

plaintiff should not prevail on the merits of the action. Pursuant to that order, the Public Service Commission on July 7, 1983, issued an order which: (1) reduced South Central Bell's fair rate of return on equity from 13.5% which it had previously set, to 12% and (2) authorized an increase in revenues in the amount of $12,700,000.00.

These motions were then filed and the court heard both motions on July 29, 1983, at the conclusion of which oral findings were made. The motion of the Public Service Commission for new trial was denied and the motion of plaintiff to modify the injunctive order was granted. The Public Service Commission was ordered to increase telephone revenues by an amount sufficient to constitute a total increase in the amount of $40,506,000.00.

This memorandum opinion will serve as further findings and conclusions of law for the court's rulings of July 29, 1983.

The court granted the motion of the Federal Communications Commission to file a memorandum, amicus curiae, in this matter and the court has considered that memorandum along with the other briefs.

## I. *Motion for New Trial*

The Public Service Commission's motion for new trial is principally based upon a re-examination of § 401(b) of the Communications Act precipitated by the decision to deny a telephone company request for a temporary restraining order in a similar proceeding pending in the United States District Court for the District of Maine (Civil Action 83–0166–P, New England Telephone and Telegraph Company v. Public Utilities Commission of Maine, et al, unreported). This court expressed to counsel its concern that sufficient consideration had not been given to the proper interpretation of § 401(b) at the time of issuance of the preliminary injunction and specifically requested that counsel brief the question whether that provision authorizes enforcement by a private party of an F.C.C. order such as that here involved. Multiple briefs have been filed by both sides.

On December 22, 1982, the F.C.C. adopted a "memorandum opinion and order," re-

leased January 3, 1983, F.C.C. 82–581, Mimco 32609. The F.C.C. had previously adopted revisions in depreciation methods and an order requiring expensing, instead of capitalizing, "inside wiring" costs of making station connections. In its January 3, 1983 order, the F.C.C., reversing forty years of its own precedent, as counsel for the Public Service Commission has pointed out, held that under the provisions of the Communications Act, all state regulatory depreciation rules in conflict with F.C.C., methodologies are pre-empted by the F.C.C. orders. The Public Service Commission rules do not comply with F.C.C. accounting procedures and the Public Service Commission has refused to permit South Central Bell to utilize F.C.C. procedures for intrastate operations.

Telephone companies are subject to regulation both by state commissions for intrastate operations and the Federal Communications Commission for interstate operations.

The F.C.C.'s change in accounting procedures converts "inside wiring" costs of making telephone connections to residences and businesses from a depreciable capital asset to an expense and increases the amounts allowed as depreciation of telephone company plant and equipment. The practical effect of these changes is to increase the operating expenses which the telephone company is allowed to charge off, thus generating the need for additional revenues to cover operating costs. The Public Service Commission does not agree that these changes are desirable, particularly because institution of these changes and the related increased operating costs mandates an increase in revenues, hence an increase in the cost to telephone subscribers. This court is not, and can not become involved in the question of whether the F.C.C.'s approach is correct. The Congress has specifically provided that no district court has authority to review or otherwise determine the validity of an F.C.C. order; the courts of appeals have exclusive jurisdiction to review final orders of the F.C.C. 47 U.S.C. § 402; 28 U.S.C. § 2342[1]. The parties have informed the court that the validity of the

F.C.C. order is on review at this time in the United States Court of Appeals for the Fourth Circuit; this court, however, can entertain no challenge to that order and must accept and apply it.

No one disputes that this is a final order of the F.C.C.—the issue is whether it may be enforced by a private party under § 401(b) against the Public Service Commission. That section reads, in pertinent part as follows:

If any person fails or neglects to obey any order of the Commission other than for the payment of money . . . the Commission or any party injured thereby, or the United States . . . may apply to the appropriate district court of the United States for the enforcement of such order. If, after hearing, that court determines that the order was regularly made and duly served, and that the person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process . . .

Counsel for the Public Service Commission concedes in brief and oral argument that the F.C.C. could issue an order specifically telling all state regulatory agencies to comply with the revised accounting procedures and that such an order would be enforceable under § 401(b) even though the Public Service Commission was not specifically named therein and had not participated in the administrative proceedings. Counsel argues, however, that the January 3, 1983 F.C.C. order is merely a legal opinion issued by the F.C.C. interpreting the provisions of the Communications Act of 1934, that it does not specifically order the state commissions to do anything and, as such, the order is not enforceable under § 401(b), although it might be enforceable by the United States at the request of the F.C.C. under § 401(a). The narrow issue then is whether this particular F.C.C. order, by its terms, requires that all state regulatory bodies comply and adopt the F.C.C. accounting procedures.

█ The January 3, 1983 order does contain an extensive discussion of what the F.C.C. considers to be the applicable law

and does conclude that the F.C.C.'s prior construction of the Communications Act was in error. Under the "declaratory ruling" portion of the order however, the F.C.C. states:

" . . . The purpose of declaratory rulings is to give guidance to affected persons in areas where uncertainty or confusion exists . . . In this case, it appears necessary to issue such a ruling to *clarify for the state commissions* and the carriers the effect of our depreciation prescriptions . . . Thus, we find it imperative to declare today that inconsistent state prescribed depreciation rates are preempted by the Communications Act and are accordingly void . . ." (January 6, 1983 order, paragraph 43, page 16 emphasis supplied).

This court can construe the above quoted language in no other fashion than as a direct order for the guidance of state commissions, specifically declaring that inconsistent state prescribed depreciation rates are void. The January 3, 1983 order closes with four "ordering" clauses, one of which directs the secretary to cause a copy to be served on each state commission. There is no "ordering clause" specifically directing each state regulatory agency to comply with the provisions of the F.C.C. order, but this court concludes that the order nevertheless is plainly directed to all state regulatory bodies and plainly declares that their depreciation procedures must comply with F.C.C. procedures. It is thus an "order of the Commission other than for the payment of money" and may be enforced under § 401(b) against any person who "fails or neglects to obey" by any party injured thereby. This court has previously determined that the F.C.C. order was "regularly made and duly served" and that the Public Service Commission, by failing to comply with it has failed or neglected to obey it and thus is "in disobedience of the same." Under these circumstances, the Congress has stipulated that "the court shall enforce obedience to such order by a writ of injunction." For these reasons, the court concludes that the preliminary injunction pre-

viously issued herein was properly issued under § 401(b) and the motion for new trial on behalf of the Public Service Commission is denied.

## II. *The Motion to Modify Order for Preliminary Injunction*

 In its prior rulings in this case, this court has pointed out that it will not become involved in the rate making process and that intrastate rate making is still within the exclusive province of the states. 47 U.S.C. § 152(b). Accordingly, the court in its original injunctive order did not direct any specific rate increase but simply ordered the Public Service Commission to apply the F.C.C. mandated accounting procedures and to issue an order "which provides for the collection of rates by plaintiff sufficient to recover the intrastate revenue requirement resulting from the F.C.C.-prescribed depreciation rates and methodologies."

The last rate increase granted to South Central Bell by the Public Service Commission was in 1981. In the course of that proceeding, the Public Service Commission, after receiving extensive testimony fixed a fair rate of return on equity at 13.5%. In 1982 South Central Bell filed another request for increase in rates in the amount of $238,000,000.00. During the course of that proceeding, the Public Service Commission determined that application of the F.C.C. mandated accounting procedures would increase South Central Bell's expense level by $40,506,000.00. The Public Service Commission declined to allow South Central Bell to utilize the F.C.C. procedures for intrastate operations and denied the request for increased rates on May 19, 1983.

In its July 7, 1983 order, the Public Service Commission confirms that application of the F.C.C. depreciation rates would cause South Central Bell's intrastate operating costs to increase in the amount of $40,506,-000.00. In response to the preliminary injunction issued June 27, 1983 the Public Service Commission did not order an increase in revenues sufficient to cover the increase in expenses. Although no evidence was received upon any matter, the Public Service Commission simply reduced South Central Bell's fair rate of return on equity from the 13.5% previously fixed by the Public Service Commission itself to 12%. This action reduced the increase in revenues required by the company from $40,506,000.00 to $12,700,000.00. This determination was made without the benefit of receiving any evidence and with no attempt to justify a revision in the previously established rate of return.

In the July 7, 1983 order, the Public Service Commission declares that because no increase in revenues was required, the May 19, 1983 order did not determine a rate of return. This court finds that the May 19, 1983 order did not refuse the company's request for South Central Bell's request for an increase predicated upon reduction in the rate of return. On the contrary, the May 19, 1983 order specifically states, "Since the Company has earned a rate of return comparable to that found to be reasonable by the Commission in the last rate proceeding, we find no justification for an increase in rates at this time." That finding is, very clearly a reiteration in 1983 that the rate of return established in 1981 is still in effect. Since the Commission received no evidence on this or any other subject in connection with issuing its July 7, 1983 order, the Commission had absolutely no justification for failing to order an increase in revenues sufficient to cover the increased operating costs of the company. This court will not become involved in the determination of the fair rate of return on equity which South Central Bell should have. That is a matter for the Public Service Commission, predicated upon proper and sufficient evidence, and, upon review, by the courts of Louisiana.

The Public Service Commission, here has not complied with the order of this court. The Public Service Commission itself has determined that there is an increase in operating expenses of $40,506,000.00 and, unless there are reasonable and proper adjustments to be made, that increase in operating costs mandates an equivalent increase in revenues. Adjusting fair return on equity downward, in the absence of evidence

justifying such an adjustment, was arbitrary and capricious—a simple exercise in arithmetic designed to minimize the increase in telephone rates. The Public Service Commission here has declined to perform its rate making duties and its response to the court's preliminary injunction leaves the court no alternative but to accept the Commission's finding that South Central Bell has increased operating costs of $40,506,000.00. Having accepted that determination, the court must require the Public Service Commission to "issue an order which provides for the collection of rates by plaintiff sufficient to recover the intrastate revenue requirement resulting from the F.C.C.-prescribed depreciation rates and methodologies." That increase has been determined by the Public Service Commission itself to be $40,506,000.00 and, since this court will not engage in rate making, that is the increase which the Public Service Commission must authorize.

For these reasons, the motion to modify the preliminary injunction is hereby GRANTED and the Public Service Commission will be ordered to grant an increase in revenues to South Central Bell which will cover South Central Bell's increase in operating costs of $40,506,000.00.