The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a Colorado corporation, Plaintiff,

v.

DEPARTMENT OF PUBLIC SERVICE REGULATION, the Public Service Commission of the State of Montana, an Administrative Agency, Thomas J. Schneider, John B. Driscoll, Howard L. Ellis, Clyde Jarvis, and Danny Oberg, in their official capacities as Commissioners thereof, Defendants.

No. CV–83–177–H.

United States District Court,
D. Montana,
Helena Division.

Sept. 2, 1983.

**6**

Lawrence D. Huss, J. Walter Hyer, III, Dennis R. Lopach, Helena, Mont., Edward T. Shaw, Seattle, Wash., for plaintiff.

Calvin Simshaw, Montana Public Service Com'n, Helena, Mont., for defendants.

## MEMORANDUM OPINION

BATTIN, Chief Judge.

This case is before the court on plaintiff's motion for a preliminary injunction to enjoin defendant from employing in its ratemaking procedures any depreciation methods and rates other than those prescribed by the Federal Communications Commission (FCC). For reasons set forth below, a preliminary injunction should be granted.

### FACTS

Due to the inter- and intrastate nature of its services, plaintiff Mountain States Telephone and Telegraph Company (Mountain Bell), a Colorado corporation, is subject to regulation by both the FCC and defendant Montana Public Service Commission (MPSC). The FCC has issued orders requiring Mountain Bell to depreciate certain capital assets, including Customer Premise Equipment (CPE), in a specified manner. *See* Order, Docket No. 82–542, released December 14, 1982. Mountain Bell contends that the use of the FCC-mandated depreciation methods and rate schedules created an increase in Mountain Bell's Montana intrastate revenue requirement. Upon the telephone company's request, the MPSC reviewed proposed changes in depreciation schedules and methodologies (MPSC Docket No. 82.6.37). In its orders 4951 and 4951a, dated November 29, 1982, and December 20, 1982, respectively, the MPSC implemented the FCC depreciation methods and rates for all of Mountain Bell's subject assets except for CPE assets which are to be transferred to AT & T upon the Bell system divesture which is scheduled for January 1, 1984. The MPSC refused to adopt, for purposes of intrastate revenue calculations, the FCC's depreciation methods and rates for CPE assets and gave the reasons for its decision in Paragraph 3 of Order 4951a which provides in pertinent part:

> [T]he Commission reaffirms its Findings in Order No. 4951 concerning customer premises equipment (CPE). In that order the Commission found that Montana ratepayers should not be asked to pay rates which reflect higher depreciation expenses attributable to competitive activities that will be transferred to AT & T. By not allowing Mountain Bell to accelerate depreciation rates on CPE the Commission does not slow down capital recovery. The embedded CPE area is in a state of rapid change flowing from Computer II and the AT & T divestiture. The Commission prefers to not consider depreciation changes in this area at this time.

On January 6, 1983, the FCC issued a Memorandum Opinion and Order, CC Docket No. 79–105, which asserted that the regulations regarding FCC depreciation rates and methods preempted conflicting state commission regulations for intrastate ratemaking purposes. It is this order which is at the root of the present controversy. Mountain Bell petitioned the MPSC to reopen Docket No. 82.6.37 and modify Orders 4951 and 4951a in response to the FCC's preemptive order. The MPSC denied this petition in an order dated March 15, 1983. On March 28, 1983, Mountain Bell filed a General Rate Case, MPSC's Docket No. 83.3.18. Again Mountain Bell requested that the MPSC conform to the FCC's order of January 6, 1983. The MPSC denied this request and refused to adopt the new FCC depreciation methodologies and schedules for Mountain Bell's CPE assets. Mountain Bell filed a complaint in this Court seeking

to enforce the FCC's order of January 6, 1983, and to enjoin the MPSC from employing in its rate-making procedures any depreciation methods and rates other than those mandated by the FCC.

## JURISDICTION AND SCOPE OF REVIEW

This Court's jurisdiction is predicated upon 47 U.S.C. § 401(b) which provides that any party injured by a person's failure to obey an FCC order may apply to a United States District Court for enforcement of that order. Section 401(b) creates a private cause of action cognizable by a Federal District Court. *Pacific Northwest Bell Telephone Co. v. Washington Utilities and Transportation Commission,* 565 F.Supp. 17, 19–21 (W.D.1983). MPSC is a "person" under this section. *Id.* at 20–21. At the outset, this Court must define the scope of review in this case. The issue to be decided is whether the MPSC should be enjoined from deviating from the FCC-prescribed depreciation methods and rate schedules in determining Mountain Bell's intrastate rates. This Court lacks jurisdiction to review the efficacy and validity of the FCC's preemptive order of January 6, 1983. Jurisdiction over such matters is vested exclusively in the courts of appeals under the Communications Act and the Administrative Orders Review Act, 47 U.S.C. § 402; 28 U.S.C. § 2342(1). *See City of Peoria v. General Electric Cablevision Corp.,* 690 F.2d 116, 119 (7th Cir.1982). The Court notes that a petition for review of the FCC's order of January 6, 1983, is pending before the Fourth Circuit in *Virginia State Corporation Commission v. FCC,* No. 83–1136 (4th Cir. filed Feb. 18, 1983). Public service commissions from several states have joined in that action individually or as members of a national organization of public service commissions. During the hearing on the present matter, the parties indicated to this Court that no stay of the contested FCC order has been issued in the Fourth Circuit proceeding. Further, the parties have not apprised the Court of any changes in that status. Because the filing of a petition for review does not automatically stay an FCC order, the FCC order of January 6, 1983, is binding upon the state public service commissions until reversed. *See City of Peoria v. General Electric Cablevision Corp.,* 690 F.2d 116 (7th Cir.1982).

## INJUNCTIVE RELIEF

Having determined the limited scope of review, this Court need only decide whether the criteria set forth in § 401(b) as prerequisites to enforcement have been met and whether a preliminary injunction is the appropriate remedy in this case.

The statutory criteria prerequisite to enforcement clearly have been met. Section 401(b) provides in pertinent part:

> If, after hearing, that court determines that the order was regularly made and duly served, and that the person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process
> . . . .

It is not disputed that the FCC order of January 6, 1983, was regularly made and duly served. Further, the record indicates that the MPSC has expressly refused to adopt the FCC-prescribed depreciation methods and rates for CPE assets with full knowledge that this decision is at odds with the FCC order.

Preliminary injunction is an appropriate remedy in this case. The power to grant or deny a request for injunction is discretionary with the Court. *See County of Santa Barbara v. Hickel,* 426 F.2d 164 (9th Cir.1970). Although injunctive relief is not routinely granted and the Court must use restraint when exercising this equitable power, *see Environmental Defense Fund, Inc. v. Morton,* 420 F.Supp. 1037, 1046–47 (D.Mont.1976), a balancing of several factors indicates that this is a proper case for injunctive relief. Four of the most important factors used by the courts to determine whether a preliminary injunction is appropriate are listed as follows in Wright & Miller, Federal Practice and Procedure: Civil S 2948:

(1) The significance of the threat of irreparable harm to plaintiff if the injunction is not granted;

(2) The state of the balance between this harm and the injury that granting the injunction would inflict on the defendant;

(3) The probability that plaintiff will succeed on the merits; and

(4) The public interest.

Mountain Bell will continue to suffer irreparable harm if a preliminary injunction is not issued. The record indicates that because the MPSC has not implemented the FCC-mandated depreciation methods and schedules for customer premises equipment (CPE), Mountain Bell has been unable to realize increased revenues to offset depreciation expenses that it must show on its books. Defendant argues that Mountain Bell will recover its total investment in CPE by either method and that the difference is merely one of timing. While under normal circumstances such an argument might be persuasive, the imminent Bell System divestiture and consequent transfer of the CPE assets to AT & T will preclude Mountain Bell from recovering by increased revenues the portion of its investment that is reflected in the difference between the FCC-mandated depreciation rates and the rates presently accepted by the MPSC. Plaintiffs assert that this difference results in a daily loss of over $5000. Montana law has no provision by which Mountain Bell may retroactively recover increased revenues should it ultimately prevail on the merits of this case. The Court finds unconvincing defendant's arguments that Mountain Bell's injury is caused by its own actions (i.e., consent to the Bell System divestiture) or that the revenue loss is immaterial compared to plaintiff's gross daily revenues.

Granting the injunction will not inflict substantial harm to the defendant or other parties interested in these proceedings. Should the FCC's order of January 6, 1983, ultimately be reversed or modified and the court rules in favor of the defendants, the plaintiff assures this Court that its ratepayers will be protected by Mont.Code Ann. § 69–3–302 (1981), which allows recovery of any overcharge occurring during the period that the injunction is in effect.

■ Mountain Bell has shown that it has a reasonable probability of success on the merits of this case. *See King v. Saddleback Junior College District,* 425 F.2d 426, 428 n. 2 (9th Cir.1970), *cert. denied,* 404 U.S. 979, 92 S.Ct. 342, 30 L.Ed.2d 294, (1971), 404 U.S. 1042, 92 S.Ct. 703, 30 L.Ed.2d 736 (1972). Mountain Bell need not show that it will with certainty win upon final determination of the merits. Further, this case presents a situation where there is an imbalance of hardship which tips sharply toward Mountain Bell. In such instances a strong showing that the party seeking injunctive relief will prevail on the merits is unnecessary and it is only required that serious questions be raised. *See Wright v. Rushen,* 642 F.2d 1129, 1132 (9th Cir.1981); *Maryland Undercoating Co., Inc. v. Payne,* 603 F.2d 477, 481 (4th Cir.1979).

As stated earlier, this Court lacks jurisdiction to delve into the merits of the FCC order of January 6, 1983. The Court notes, however, that courts have upheld the FCC's broad preemptive power in a number of cases. *See, e.g., North Carolina Utilities Commission v. FCC,* 552 F.2d 1036 (4th Cir.1977); *Computer and Communications Industry Assn. v. FCC,* 693 F.2d 198 (D.C.Cir.1982).

The Court must consider the public interest in deciding whether to grant or deny the request for injunctive relief. On balance, the Court finds no strong public interest considerations that militate against issuance of the injunction in the present case. Undoubtedly, increased rates in the interim governed by the injunction are a matter of the public interest in the locale affected by those rates. On the other hand, there is a broader public interest in the Congressional purpose of achieving nationwide uniformity in telecommunications policy that is strengthened by the granting of this injunction. *See Chesapeake & Potomac Telephone Co. v. Public Service*

*Commission,* 560 F.Supp. 844, 849 (D.Md. 1983).

Finally, the issuance of injunctive relief in similar fact situations is not a matter of first impression with the federal courts. On similar facts, the majority of courts has issued injunctions against state regulatory commissions which have failed to implement FCC-mandated depreciation rates and methods in calculating Bell Telephone Company intrastate revenues. *See Chesapeake & Potomac Telephone Co. v. Public Service Commission,* 560 F.Supp. 844 (1983); *Pacific Northwest Bell Telephone Co. v. Washington Utilities and Transportation Commission,* 565 F.Supp. 17 (W.D.Wash. 1983); *Southwestern Bell Telephone Co. v. State Corporation Commission,* No. 83–4090 (D.C.Kan. April 8, 1983). This Court follows the lead of that majority and grants plaintiff the requested injunctive relief.

An order conforming to this Memorandum Opinion was issued on August 22, 1983.